## FULLER'S ADM'R *vs.* FULLER.

[BILL IN EQUITY FOR CANCELLATION OF DEED OF GIFT.]

1. *Cancellation of deed, on grounds of fraud, duress, and undue influence.*
A deed of gift, by which the grantor conveyed all his property, real
and personal, to his living children by his first wife, excluding the
children of two deceased sons by her, and all his children by his
second wife, and reserving to himself only the right of possession
and a support during his life,—cancelled and set aside, at his instance,
on proof that he was seventy years of age, illiterate, and enfeebled
in will and intellect; that he had long cherished and expressed a
desire and intention to provide for his children by his second wife,
who were born out of lawful wedlock; that his elder sons, who were
resolute and determined men, were cognizant of this desire and inten-
tion on his part, and opposed its execution; that they had taken posses-
sion by force of more than forty of his slaves, in order to prevent the
consummation of a contract of sale which he was about to make,
preparatory to a settlement on his second wife and children; that
the deed was executed for the purpose on his part of procuring the
restoration of these slaves, and that they were restored to him imme-
diately after the execution of the deed.

2. *Second marriage of guilty defendant in divorce suit.*—A statutory prohi-
bition of subsequent marriage by the guilty defendant in a divorce
case, has no extra-territorial operation, and does not affect the
validity of a subsequent marriage in another state.

APPEAL from the Chancery Court of Perry.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed on the 29th February,
1856, by Alfred Fuller, against his sons, John B. and Wm.
Fuller, and others; and sought the cancellation of a deed,
on the grounds of fraud, duress, and undue influence. The
deed was dated the 26th day of March, 1855, and was as
follows:

"State of Alabama,　)　Know all men by these presents,
　　Perry County,　　} that I, Alfred Fuller, of the county
and State above written, for and in consideration of the
love and affection which I have for my legal children, or
children in legal wedlock begotten, as well as for other and

19

good considerations, and also for the sum of five dollars to me in hand paid by my said children, at and before the sealing of this deed, (the receipt whereof is hereby acknowledged,) do hereby give, grant, and convey, unto my children in lawful wedlock begotten, all my estate which I now own or possess, whether the same be lands, negroes, or other personal or real estate, to have and to hold the same unto my said legal heirs or children, and unto their heirs forever; upon the condition, however, that I, Alfred Fuller, am to remain in the possession and control of the said granted lands and property, for and during my natural life, and enjoy and use the same for myself and family to support amply upon during my life; all the natural increase of said property, over and above an ample and comfortable support for myself and family, to be and remain with the common stock of the property, to be divided among my said legal children or heirs at my death; such children to take in equal parts among them the said property as is or may be provided for by the statute laws of the State of Alabama; the said children to let the said property remain in the hands of the grantor, unmolested, during his lifetime, upon condition as above. The income of said property over and above the support above named is also to remain to be divided as provided in this deed. And I, the said Alfred Fuller, declare this instrument to be my deed, to take effect, subject to the above condition, from the execution hereof, and be binding and irrevocable, and not as a will. But, if I am disturbed or molested in the control of said property, during my life, by my said children, then this conveyance is thereby to be defeated and annulled. In witness", &c.

Answers were filed by the principal defendants, denying the charges of fraud, undue influence, &c., and asserting the validity of the deed. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

W. M. BROOKS, for appellant.
JOHN & CHAPMAN, *contra*.

A. J. WALKER, C. J.—The important question of this case is, whether the evidence is such as to justify a decree setting aside the deed of Alfred Fuller, made on the 26th March, 1855. This deed, upon a nominal consideration, conveys to the children of the grantor "begotten in lawful wedlock" all the grantor's property, real and personal, reserving to him the right to the possession of the property during his life, but subject to the restriction, that all increase and income, beyond an ample and comfortable support for himself and family, should be incorporated with the *corpus* of the estate. The grantor had two sets of children. The older set were begotten in lawful wedlock; and of these, two sons had died, leaving children. This set of descendants lived apart from the grantor. The younger set of children were the fruit of an illicit connection with a woman whom, while the wife of another man, he had defiled, and taken into his house. He married in 1840; but the second set of children were born during his concubinage with her. This woman, and those children, composed his family at the date of the deed, and were recognized and treated by him as his wife and children. This woman and her children, and the children of the grantor's deceased sons of the older set, were excluded from all participation in the estate of the grantor, in the event of their surviving him; and he was, by an irrevocable instrument, deprived of the power of providing for them.

To make some provision for this woman and her unlawfully begotten children, is proved to have been, as far back as 1837 or 1838, an object of intense desire, and even painful solicitude to the grantor; and such a desire seems to have continued up to the day of executing the deed. No reason for a change of sentiment or feeling in reference to the woman and her children is even attempted to be made, nor is any explanation made of a purpose to exclude from participation in his estate the children of the deceased sons of the first set of children.

The grantor, at the time of making the deed, was about seventy years of age. He had been a man of great natural vigor of intellect and will; but the evidence demonstrates that the vigor of his intellect, and the force of his

will, had declined. His sons belonging to the first set of children were determined, resolute, brave men; one of them esteemed by a competent judge to have been a dangerous man. These sons were deeply incensed at the criminal conduct which had given birth to the grantor's second set of children, and some of them imputed to him the murder of their mother. The grantor dreaded the opposition of these sons to any act providing for his illegitimate children and their mother; and this was manifested, at least seventeen years before the deed was made, by the expression of a desire to conceal any arrangement to provide for them from the sons of his older set of children.

The grantor was an illiterate man, who could write his name; but it appears doubtful, from the evidence, whether he could read manuscript so as to understand it. He had accumulated a good, if not large fortune; and his love of property was so great as to procure for him, from one of the witnesses, the appellation of "skin-flint."

This old man, enfeebled at least in will and capacity for resistance, seventy years of age, loving property, anxious to provide for the woman whom he had made the mother of illegitimate offspring, and for her children, and for many years cherishing that as a darling object; estranged, to some extent at least, from his first set of children, and dreading the opposition of some of them,—made a deed, whereby he irrevocably stripped himself, with a small reservation, of all property of every description, destroyed his power to provide any thing for the woman and the children she had born him, effectually thwarted his long-cherished object of providing for them, as well as for the orphans of his dead sons; and all this in favor of a set of children, who cer-·tainly presented to him no peculiar ground for preferment over his other children. Such a deed is unnatural, unrea-·sonable, and suspicious.

At the time when the deed was executed, forty-one of the grantor's negroes were in the possession of some of his sons, belonging to the first set of children, in favor of whom this extraordinary deed was made. These negroes were restored to the grantor, immediately after the execution of the deed; and the evidence convinces us that they were

restored because the deed was executed, and that the deed was executed in order to procure the restoration of them; and that if the grantor's mind had been left to its free and uncontrolled action, he would not have made such a deed. We are further convinced by the evidence, that the grantor had made a contract for the sale of his property, with a view to preparing to make a more secure provision for the woman with whom he had last lived, and his children by her; that some of the sons, belonging to the set of children in whose favor the deed was made, in the night-time, and without the grantor's knowledge, carried off forty-one of his most valuable slaves, for the purpose of preventing the consummation of the sale; and that, to obtain a restoration of those slaves, and to avoid further conflict with those sons, the grantor made the deed; and that those sons availed themselves of the possession of the slaves, and of the inequality of their aged father in a contest with them, to procure the deed.

We are further convinced that, either from the confusion and perturbation of mind under which the deed was signed, or from the haste in which its contents were considered and discussed, or from his failure to comprehend the reading of it, or from his own inability to read it intelligently, the grantor misunderstood it, and thought that under it all his lawful heirs, which would have included the second set of children, and the children of his dead sons, would have shared in his prosperity, and that the deed was executed under this mistake.

Finding these conclusions of fact, it is clear that, upon established principles of law, the deed should be set aside. *Thompson v. Lee*, 31 Ala. 292; *Taylor v. Kelly*, 31 Ala. 59; *Pool v. Pool*, 35 Ala. 12; *Huguenin v. Baseley*, 14 Ves. 273; *Dent v. Bennett*, 4 M. & C. 269; *Taylor v. Taylor*, 8 How. 183; *Whelan v. Whelan*, 3 Cow. 537; 1 Story's Equity Jur. § 222.

2. We have no doubt of the legality of the marriage of Alfred Fuller with Susan, the mother of his last children. At the time of that marriage, he was himself a widower, and was, therefore, competent to contract marriage. The former husband of Susan had previously obtained a divorce

in Georgia, where he resided. This rendered her competent to marry. If there was any provision of the Georgia law, prohibiting the guilty defendant in a divorce suit from marrying again, this prohibition had no extra-territorial operation; and notwithstanding such prohibition, the guilty party would be competent to marry in the State of her residence.—2 Bishop on Marriage and Divorce, §§ 700–04; 1 Bishop on Marriage and Divorce, § 306.

The decree of the court below is reversed, and a decree must be here rendered, setting aside and annulling the deed made on the 26th March, 1855, and the cause must be remanded for further proceedings in conformity to the foregoing opinion and decree.

Byrd, J., did not sit in this cause, having been of counsel in the court below.