.FRAME and others, Respondents, vs. THORMANN, Appellant.

*January 13 — April 25, 1899.*

*Domicile: Change: Evidence: Probate of will: Jurisdiction: Conflict of laws: Effect of judgment in another state: Legitimacy of children: Marriage and divorce: Statutes: Extra-territorial effect.*

1. In a proceeding to probate a will the evidence (stated in the opinion) is *held* to sustain a finding that the testator, formerly a resident of Louisiana, was at the time of his death a resident of and domiciled in this state.
2. In order to effect a change of domicile from one state to another it is only essential that there should be a removal accompanied by an intention to make the new abode a permanent residence or home; and the fact that there was an intention to return to the former domicile at some future indefinite time would not prevent the change from taking effect.
3. An order or judgment of a Louisiana court appointing an administrator of the estate or succession of a deceased person, though based on a petition alleging that the deceased died while a resident of that state and that he left property within the jurisdiction of the court, is not conclusive as to the domicile of the deceased and does not, under sec. 1, art. IV, Const. of U. S. (requiring full faith and credit to be given in each state to the judicial proceedings of every other state), preclude a Wisconsin court from taking jurisdiction of a pro-

Frame and others vs. Thormann.

ceeding to probate a will of the deceased and administering so much of his estate as was actually located in Wisconsin.

4. So far as the judgment of the Wisconsin court, in such a case, attempted to legitimatize adult children of the testator residing in another state, it was extra-judicial and inoperative.

5. In a proceeding to probate the will of a testator who, at the time of his death, was a resident of and domiciled in Wisconsin, it is immaterial whether his children to whom the estate is left are legitimate or illegitimate.

6. The statutes of another state, prohibiting a person who has been divorced for adultery from remarrying, have no extra-territorial force, and cannot prevent him from lawfully remarrying in this state.

APPEAL from a judgment of the circuit court for Waukesha county:. JAMES J. DICK, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Carney, Clasen & Walsh,* attorneys, and *E. Howard McCaleb,* of counsel, and oral argument by *F. Clasen* and *Mr. McCaleb.* They contended, *inter alia,* that the lower court failed to give "full faith and credit" to the judgment and judicial proceedings of the Louisiana court, in violation of sec. 1, art. IV, Const. of U. S. That judgment was a decree *in rem* rendered by a probate court, and as such is binding upon the world. Bigelow, Estoppel (1st ed.), 159; *Grignon's Lessee v. Astor,* 2 How. 338; Black, Judgments, § 868; Freeman, Judgments, §§ 319*b*, 608; *Broderick's Will,* 21 Wall. 509; *Holmes v. O. & C. R. Co.* 9 Fed. Rep. 229; *Florentine v. Barten,* 2 Wall. 216. Seniority in date of the Louisiana judgment entitles it to priority over the Wisconsin judgment. This rule has been universally adhered to in construing the "full faith and credit" clause of the constitution. *Memphis & C. R. Co. v. Grayson,* 88 Ala. 572; *Bank of U. S. v. Merchants' Bank,* 7 Gill, 415; *Paine v. Schenectady Ins. Co.* 11 R. I. 411. In appointing *Antoinette Thormann* administratrix of the succession of Joseph Fabacher, deceased, the Louisiana court necessarily had to determine: (1) That the city of New Orleans, parish of Orleans, was the proper place to open the succession of Joseph Fa-

bacher, because "in the parish where the deceased resided, if he had a fixed domicile or residence in the state." Rev. Civ. Code of La. art. 935. (2) That *Antoinette Thormann* was a beneficiary, heir, and next of kin, entitled as such to be appointed administratrix. Rev. Civ. Code of La. art. 1042; *Caujolle v. Ferrié*, 13 Wall. 465. (3) That the deceased died intestate. Rev. Civ. Code of La. art. 886; *Franklin v. Franklin*, 91 Tenn. 119. The succession of Joseph Fabacher in the parish of Orleans was opened as an original and not as an ancillary one. The administratrix was appointed after due advertisements and delays, under a petition, verified by affidavit, alleging that "deceased was domiciled in New Orleans at the time of his death." All the legatees under the alleged Wisconsin will resided in Louisiana at the time, and the decree appointing contestant the administratrix of his succession determined that he was domiciled in New Orleans at the time of his death, and as such is a *final decree*, possessing all the elements of the thing adjudged, and is *res adjudicata* as to the question of domicile. *Holmes v. O. & C. R. Co.* 5 Fed. Rep. 523; Black, Judgments, § 639. Under sec. 905, R. S. of U. S., said judgment must have the same effect given it in the courts of Wisconsin as it has in the courts of Louisiana. In the courts of Louisiana such a decree is conclusive as to the domicile of the deceased, and cannot be questioned except by action of nullity or appeal. *Duson v. Dupré*, 32 La. Ann. 896; *Grevemberg v. Bradford*, 44 La. Ann. 418; *Simmons v. Saul*, 138 U. S. 439; *Garrett v. Boeing*, 68 Fed. Rep. 51, 61.

To effect a change of domicile, a new residence must be acquired so permanently as to exclude an existing intention to return to the old one or to make a domicile elsewhere than at the new place of residence. *Hartford v. Champion*, 58 Conn. 268; *In re Zerega's Will*, 20 N. Y. Supp. 417; *Barkley v. Succession of Steers*, 47 La. Ann. 951. See, also, Jacobs, Domicil, § 151; *De Bonneval v. De Bonneval*, 1

·Curteis' Eccl. 856; *Somerville v. Lord Somerville*, 5 Ves. 750; *Hodgson v. De Beauchesne*, 12 Moore P. C. 285; *White v. Brown*, 1 Wall. Jr. 217; *Dutcher v. Dutcher*, 39 Wis. 658; *Hall v. Hall*, 25 Wis. 608. Payment of personal taxes without resistance or protest is good evidence of domicile. *Mitchell v. U. S.* 21 Wall. 350; *Weld v. Boston*, 126 Mass. 166; *Carey's Appeal*, 75 Pa. St. 201. The purchase and maintenance of a burial place by a person for himself and family, and his desire of being buried there, has always been considered strong evidence of domicile. *Succession of Franklin*, 7 La. Ann. 395; *Haldane v. Eckford*, L. R. 8 Eq. 631; *Heath v. Samson*, 14 Beav. 441; *Brunel v. Brunel*, L. R. 12 Eq. 298; *In re Capdevielle*, 33 L. J. Exch. 306. The mode in which a person describes himself in legal documents is proof of intent; and the entries of a party's name and address in an hotel register are considered good evidence as tending to show his domicile. *Smith v. Croom*, 7 Fla. 81; *Thorndike v. Boston*, 1 Met. 242; *Cabot v. Boston*, 12 Cush. 52; *Cole v. Cheshire*, 1 Gray, 441. The residence of children and that of relatives is an important factor in determining the question of a person's domicile. *Stevenson v. Masson*, L. R. 17 Eq. 78; *Haldane v. Eckford*, L. R. 8 Eq. 631; *Hodgson v. De Beauchesne*, 12 Moore P. C. 285; *Hurley v. Hurley*, 67 Law T. N. S. 384. The question in this case is not one of political or municipal domicile, but of the domicile of succession. There is a vast and material difference between the two. Facts and circumstances which might be held sufficient to establish a domicile in the former might fail altogether in establishing a testamentary or principal domicile. Phillim. Domicile, 17; *Smith v. Croom*, 7 Fla. 81; *Stephenson v. Langston*, 1 Hagg. Con. 379. The act of voting is not conclusive on the question of domicile. When questions as to taxation arise, the exercise of suffrage may operate as an estoppel, but the vote may have been without right, or it may have been given through mistake

Frame and others vs. Thormann.

on the part of the voter as to his legal rights. *Ellsworth v. Gouldsboro'*, 55 Me. 94; *Lincoln v. Hapgood*, 11 Mass. 350; *Easterly v. Goodwin*, 35 Conn. 279; *Hayes v. Hayes*, 74 Ill. 312; *Mandeville v. Huston*, 15 La. Ann. 281; *Folger v. Slaughter*, 19 La. Ann. 323; *Villere v. Butman*, 23 La. Ann. 515; *Clarke v. Territory*. 1 Wash. Ter. N. S. 68. See, also, *Hewes v. Baxter*, 48 La. Ann. 1303; *White v. Brown*, 1 Wall. Jr. 217; Jacobs, Domicil, § 435, note 5; *Gardner v. Board of Education*, 5 Dak. 259; *East Livermore v. Farmington*, 74 Me. 154. The mere fact of the transfer of the bodily presence from one place to another will not work a change of domicile; and while mere intention is sufficient to retain an original domicile, it is not sufficient to establish a new one, no matter how strong or how solemnly expressed. *White v. Brown*, 1 Walk. Jr. 217; *Mitchell v. U. S.* 21 Wall. 350; *Hayes v. Hayes*, 74 Ill. 312; *High, Appellant*, 2 Doug. (Mich.), 515; *Jennison v. Hapgood*, 10 Pick. 77; *Bell v. Kennedy*, L. R. 1 S. & D. App. 307; *Collier v. Rivaz*, 2 Curteis' Eccl. 855; *Brown v. Smith*, 15 Beav. 444; *Forbes v. Forbes*, Kay, 341; *Waller v. Lee*, 8 La. 213; *Nelson v. Botts*, 16 La. 596.

For the proponent there was a brief by *Ryan & Merton* and *Chas. F. Buck*, and oral argument by *T. E. Ryan* and *Mr. Buck*.

*D. S. Tullar*, guardian *ad litem* for certain minors.

CASSODAY, C. J. Joseph Fabacher died March 3, 1897, at Touro Infirmary, in New Orleans, leaving a paper writing, purporting to be his last will and testament, bearing date October 29, 1896, and executed at Waukesha, Wisconsin, and which writing (omitting the formal parts) is to the effect (1) that the testator directed all his just debts, funeral expenses, and expenses of administration to be paid out of his personal estate; (2) that he donated and bequeathed to his beloved wife, Magdalena, the income of $20,000 of four per cent. New Orleans city bonds, to be paid by his executor

or trustee of his last will and testament, as collected by him, upon the express condition that she should continue to live and cohabit with him as his wife and care for him in health and sickness until his death, otherwise that she should take nothing thereunder; (3) that he thereby willed and bequeathed unto his brother Johannes, of Havre, France, an annuity of $200 to be paid to him each year so long as he should live, and at his death the further sum of $100 to provide for his funeral expenses; (4) that all the rest, residue, and remainder of his property, both real and personal, wheresoever situated, he thereby gave, devised, and bequeathed to his ten children, to wit, Joseph H., Albert, Anthony, Louis, Peter, John J., Barbara, Alois, *Magdalena*, and *Jacob A.*, share and share alike, to each one tenth part thereof, to have and to hold as their own forever; (5) that upon the death of his said wife, Magdalena, or upon the violation of the provision for her contained therein by reason of nonperformance on her part of the condition thereof, he thereby willed, devised, and bequeathed said $20,000 of four per cent. New Orleans city bonds to his said ten children, share and share alike, to each one tenth part thereof; (6) that he thereby nominated and appointed *Andrew J. Frame*, of Waukesha, Wisconsin, as sole executor and trustee of his said last will and testament.

Upon the death of Joseph Fabacher such last will and testament was presented by such executor to the county court of Waukesha county, for probate, March 27, 1897, and that court on the same day fixed the time for the hearing thereof May 4, 1897, and thereupon caused notice thereof to be given. Upon the hearing thereof May 4, 1897, this contestant and the appellant herein, *Antoinette Thormann*, appeared by her attorney, and represented that she was a daughter and sole heir at law of said deceased, and objected to the probate of said instrument upon the grounds (1) that the deceased was formerly married to one Maria Anna Frey, May 13, 1850, at New Orleans; that the issues of said mar-

riage were two children, viz., *Antoinette*, the contestant herein, and Andreas, who died, about 1887, unmarried and without issue; that said deceased and his said wife Maria Anna lived and cohabited together as husband and wife from the date of their marriage up to 1864, at which time he, the deceased, deserted and abandoned his said wife, Maria Anna, and went to live in concubinage with Magdalena Frey, a sister of his said wife, and continued so to live until about January, 1874; that January 12, 1874, his said wife, Maria Anna, instituted an action for divorce on the ground of adultery, and that a decree to that effect was granted therein to Maria Anna January 27, 1874, by the Fifth district court of the parish of Orleans; that thereafter said deceased in form married Magdalena Frey at New Orleans; that the deceased had eleven children by Magdalena Frey, all of whom were illegitimate, and ten of whom are named in the will, three of whom were born after such supposed marriage, and eight of whom, including Lawrence, not named in will, were born before such supposed marriage; that at the time of the death of Joseph Fabacher, deceased, he was domiciled in New Orleans, Louisiana, and an inhabitant and resident thereof; that the county court of Waukesha county had no jurisdiction of such probate, nor in the settlement or distribution of the estate of the deceased; (2) that any attempt on the part of Joseph Fabacher, deceased, to acquire or create a fictitious domicile, inhabitancy, or residence in Waukesha, Wisconsin, was made with a fraudulent purpose and intent of depriving the contestant, *Antoinette Thormann*, of her legitimate and hereditary rights, as the sole heir at law of the deceased under the statutes of descent of Louisiana; (3) that the execution of such will was procured by undue influence exercised over the deceased, and particularly by Magdalena Frey, the alleged widow of the deceased; (4) that the will was not duly executed by Joseph Fabacher in the manner and form required by law.

On August 17, 1897, such paper writing was admitted to probate by the county court of Waukesha county. Thereupon the contestant appealed from such judgment of the county court so admitting the will to probate to the circuit court for Waukesha county.

Subsequently the cause was tried by the circuit court for Waukesha county and a jury, and at the close of the trial the jury returned their verdict upon the questions submitted to them, and to the effect (1) that the paper writing presented for proof, allowance, and probate as the last will and testament of Joseph Fabacher, deceased, was executed in conformity with the provisions of the statutes of Wisconsin relating to wills; (2) that the alleged last will and testament of Joseph Fabacher, deceased, was his own voluntary act and deed; (3) that the domicile of Joseph Fabacher at the time of his death, March 3, 1897, was· at the city of Waukesha, county of Waukesha, and state of Wisconsin.

Thereupon the circuit court found, as matters of fact, in effect, (1) that the deceased duly made and executed, as and for his last will and testament, the proposed will offered for probate, and did duly make, execute, and acknowledge the same to be his last will and testament October 29, 1896, at Waukesha, in Wisconsin; (2) that the deceased so executed such will of his own free will and accord, without any influence being brought to bear upon him whatever, and that he was not under undue influence at the time of the making and subscribing of such will, and that in the execution thereof he had duly complied with all the requirements of the statutes of Wisconsin; (3) that at the time of the making of such will, and at the time of the death of the deceased, said Joseph Fabacher was a resident and inhabitant and his domicile was at the city of Waukesha, in Wisconsin; that June 20, 1895, said testator, in his lifetime, duly acquired a domicile and residence in, and then and there became an inhabitant of, Waukesha, in Waukesha county,

Wisconsin; that such residence and domicile continued un-
interruptedly from June 20, 1895, down to and including
March 3, 1897, the date of his death; (4) that at and prior
to the making and execution of said last will and testament
the deceased was of sound mind and memory, and compe-
tent to make a will; (5) that September 30, 1895, said tes-
tator, Joseph Fabacher, in his lifetime, and while so dom-
iciled at Waukesha, was duly and legally married at the
city of Milwaukee, in Wisconsin, to said Magdalena Frey,
who survives him as his widow; that the issue of said Joseph
Fabacher and Magdalena Frey were eleven children, to wit,
Joseph H., Albert, Lawrence, Anthony, Louis, Peter, John J.,
Barbara, Alois, *Magdalena*, and *Jacob*, all of whom were
born prior to said marriage of September 30, 1895, and all
of whom were by their said father, Joseph Fabacher, in his
lifetime, and subsequently to the said marriage, duly and
severally recognized by him as his children and offspring,
and that all of said children were at the time of his death,
and now are, heirs at law of said Joseph Fabacher, de-
ceased; (6) that the contestant herein *Antoinette Thormann*,
is a child and heir at law of said Joseph Fabacher, deceased,
by such former marriage with Maria Anna; (7) that in said
will the testator did not mention his son Lawrence as a
beneficiary or legatee, nor did he mention his daughter
*Antoinette Thormann*, but that such omission was not by
mistake or inadvertence on the part of the testator.

And as conclusions of law the circuit court found (1) that
the domicile of the testator, Joseph Fabacher, at the time of
his death, March 3, 1897, was at the city of Waukesha, in
Wisconsin; (2) that said testator left him surviving his
widow, Magdalena Fabacher, and the twelve children men-
tioned, as his next of kin and heirs at law, all of whom were
of full age, except *Magdalena* and *Jacob*, and that all of said
children were the legitimate and duly legitimatized children
of said Joseph Fabacher, deceased, under and by virtue of

the laws of Wisconsin; (3) that the will of Joseph Fabacher, deceased, was entitled to probate in the county of Waukesha and state of Wisconsin as the last will and testament of said deceased, and the same was thereby admitted to probate as the last will and testament of said deceased; (4) that judgment should be entered admitting to probate the will of said deceased, and affirming the judgment of the county court admitting the same to probate, and that the records and proceedings therein should be transmitted to the county court of Waukesha county for further proceedings according to law; that the proponent's costs and attorney's fees and the fees of the guardian *ad litem* in the circuit court should be paid out of the estate of the deceased; and judgment was thereupon ordered to be entered in accordance with such findings.

From the judgment so entered the contestant appeals.

Upon the argument in this court the counsel for the contestant frankly conceded that the question whether the will was executed in the manner and form required by the statutes of this state, and the question whether such execution had been procured by undue influence, had, as a result of the trial, both been eliminated from the case. It is also conceded that this leaves but three grounds upon which counsel seek to reverse the judgment on this appeal. One is that the preponderance of the evidence shows that the testator was an inhabitant of, and domiciled in, New Orleans at the time of his death.

1. This contention is based upon the concession that up to about June 20, 1895, he was domiciled in New Orleans; and hence that the burden was on the proponent to prove that he had completely abandoned his residence and domicile in New Orleans, without any intention of returning, and had settled permanently in Waukesha. As evidence in support of such contention, counsel refer to the fact that he was assessed in New Orleans on household goods and furniture

exceeding $500 in value in each of the years 1895 and 1896, and that the same were paid; that he was not assessed in Waukesha until June 26, 1896; that he had purchased $50,000 of New Orleans city bonds, presumably in 1894 or 1895, which were kept at the Waukesha National Bank; that he had kept an account at the New Orleans National Bank, in which he had deposited from May 6, 1896, to January 7, 1897, in the aggregate, $15,536.34, against which he had at various times drawn checks to nearly the same amount; that May 12, 1896, he deposited in the Waukesha bank $1,150, and that he then had on deposit in that bank a balance of $868.17, making in all $2,018.17, against which checks had been drawn, so that January 7, 1897, he only had a balance to his credit in that bank of $81.56; that in the summer and autumn of 1896 he manifested solicitude for the care of a family tomb he had erected seven years before in New Orleans, and made arrangements to have it repaired and fixed up, and expressed a desire to be buried there; that a short time prior to June 20, 1895, he had executed conveyances describing himself as of New Orleans; that in December, 1895, and May, 1896, he registered at an hotel in Chicago as of New Orleans; that his children remained in New Orleans, and were members of the church there; that when summoned as a juryman in New Orleans on January 6, 1897, he excused himself on the ground that he was seventy-two years of age; and that during 1895 and 1896 he made many conflicting oral declarations concerning his home and his intentions in reference to the same.

On the other hand, there is evidence tending to prove that for several years prior to 1895 the testator, with his family and minor children, had been in the habit of spending his summers in Waukesha, and the balance of his time at New Orleans; that in the fall of 1893 he purchased a fine lot in Waukesha, and commenced the erection of a dwelling house thereon, which was completed in the spring of 1894,

and which was furnished and occupied by him and his family thereafter until his death; that prior to 1895 he was the owner of a substantial homestead in New Orleans, together with other real estate; that in the fall of 1894 and spring of 1895, with the exception of his tomb or cemetery lot, he sold all of his property in that city, including his homestead; that, when asked by his neighbors and friends and business associates at New Orleans why he was disposing of his property, he told them substantially the same thing, that he was not going to live any longer in New Orleans, that he was going to Waukesha to make his home, and that was why he was disposing of his property; that such statements were not volunteered, but were simply made in response to inquiries by friends and business associates; that when he came to Waukesha he told all whom he had occasion to speak to upon that subject in connection with any act performed there that Waukesha was his home, that he had sold his home in New Orleans, and no longer claimed or had any home there; that in the spring of 1895 he came with his family, including his two minor children, to Waukesha, and brought with him his horses and carriage, and also his bonds, mortgages, and evidences of debt, and deposited the same in a safety-deposit vault, in which he rented a box, in the Waukesha National Bank, and that they remained in that bank up to the time of his death; that he procured a pew for himself and family in St. Joseph's Catholic Church, in Waukesha, and surrendered the seat in the church which they were formerly accustomed to occupy in New Orleans; that he claimed that the climate and waters of Waukesha were better for his health than in Louisiana; that he provided himself with a fur coat, fur cap, arctic shoes, and clothing which would make him comfortable in the Wisconsin climate in winter; that as his marriage to Magdalena Frey on July 24, 1874, in Louisiana, was void under the laws of that state, he was remarried to her in Milwaukee

September 30, 1895,— a little over three months after he so became a resident of Waukesha, and described himself in the certificate of marriage as a resident of Waukesha; that in the fall of 1896 he appeared before the board of registration in Waukesha, and caused himself to be registered as a voter in the Second ward of the city of Waukesha, in which he resided and voted at the general election in November, 1896, after being questioned by the board of registration and the inspectors of the election; that October 29, 1896, he executed the will in question, describing himself therein as of Waukesha, Wisconsin, and therein nominated and appointed the plaintiff herein, *Andrew J. Frame*, who was at the time president of the bank in which such bonds, mortgages, and evidences of debt were deposited, as sole executor and trustee of such will; that after he so became a resident of Waukesha he was in New Orleans during an election for mayor of that city, at which one of his best friends was a candidate, and when requested to vote he absolutely refused to do so, on the ground that he was not a resident of New Orleans and had no right to vote in that city; that his children who were of age were all in business in New Orleans; that his son Lawrence was a man of considerable means, and constructed a house on Calhoun street in that city, and furnished the same, in order that his father and mother might occupy the same when they visited their children in winter; that after the election in November, 1896, the testator was induced by the importunities of his wife and a desire to visit his children to go to New Orleans and occupy the house so constructed by Lawrence for the winter, but with the intention of returning to Waukesha in the spring, and that while there he was taken sick, and died March 3, 1897.

Upon evidence thus briefly outlined the jury found that at the time of the testator's death his domicile was at Waukesha. The court found the same to be the fact, and also

found that the testator acquired a domicile and residence in, and became an inhabitant of, Waukesha on June 20, 1895, and that such residence and domicile continued uninterruptedly from that time down to and including the date of his death. Such findings are not only supported by evidence, but by the great preponderance of the evidence. The testator was seventy-two years of age. There is no claim that he was laboring under any disability which prevented him from changing his domicile from New Orleans to Waukesha. He was manifestly a man of decided notions of his own, and with sufficient force of character to carry his purposes into execution. He, in common with all other citizens in this country, had a legal right to change his residence from one state to another whenever he desired. In the language of the Massachusetts court: "A man has a right to change his domicile for any reasons satisfactory to himself. In determining whether there has been such a change from one place to another, the test is to inquire whether he has in fact removed his home to the latter place with the intention of making it his residence permanently or for an indefinite time. If he has, he loses his old domicile and acquires a new one with all its rights and incidents; and the law does not inquire into the purposes or motives which induced him to make such change. It may be because he prefers the laws of the new place of domicile, or because he can diminish his taxes and other burdens, or because he desires to bring a suit in a court which would not otherwise have jurisdiction. His status as an inhabitant depends upon the fact that he has made a change of his home, and not upon the motives or reasons which influenced him to do so." *McConnell v. Kelley*, 138 Mass. 373, and cases there cited; Jacobs, Domicil, § 142.

The relationships disclosed by the record and insisted upon by the contestant's counsel were well calculated to stimulate in the testator a desire to change his residence and domicile as he did. In doing so, he was merely exercising the

right of an American citizen. To effect the change, it was only essential that such removal should be accompanied by an intention to thereafter make Waukesha his permanent residence or home. *State ex rel. Wood Co. v. Dodge Co.* 56 Wis. 79; *Kempster v. Milwaukee*, 97 Wis. 343; *Hart v. Lindsey*, 17 N. H. 235; *S. C.* 43 Am. Dec. 597; *Ringgold v. Barley*, 5 Md. 186; *S. C.* 59 Am. Dec. 107, and note; *Hairston v. Hairston*, 27 Miss. 704; *S. C.* 61 Am. Dec. 530. Even if there was an intention to return at some future indefinite time, yet that would not have prevented the change from being effectual. *Holmes v. Greene*, 7 Gray, 299; *Sleeper v. Paige*, 15 Gray, 349; *Kempster v. Milwaukee, supra;* Jacobs, Domicil, §§ 159, 171. Most of the testator's children resided in New Orleans, and the mere fact that he went there with his family for the winter, or that he kept a bank account there, or that he had expressed a desire to be finally buried in the tomb which had several years before been constructed at considerable expense, is not inconsistent with such change of domicile from New Orleans to Waukesha.

2. Counsel for the contestant contends that the Waukesha courts were barred from entertaining such jurisdiction and entering such judgment by reason of a former final judgment of the civil district court for the parish of Orleans, Louisiana, in the succession of Joseph Fabacher, rendered and signed April 22, 1897, appointing the contestant administratrix of said estate, and by her acceptance and qualification of such trust. This is based upon duly authenticated documentary records of proceedings in that court, to the effect that the deceased died in New Orleans, March 3, 1897, of strangulation of umbilical hernia; that March 29, 1897, two days after the petition for the probate of the will was presented to the county court of Waukesha county, the contestant made and verified her petition to the judges of such civil district court for the parish of Orleans, representing the death of her father, that at the time of his death

and for many years before he was a "citizen of Louisiana, domiciled and residing in the city of New Orleans," that he left property within that city and within the jurisdiction of that court, that she was the "sole surviving heir and legitimate child of said deceased," and praying that she be appointed such administratrix, that an inventory of the property belonging to the estate be made and the value thereof appraised by appraisers to be appointed for that purpose, that an attorney for absent heirs be appointed, and that the proper notices be given; that such petition was filed and notice of application and inventory ordered, and such appraisers and such attorney were appointed March 30, 1897; that such inventory was taken and the contestant petitioned the court for the approval of the same April 5, 1897; that such inventory stated that April 5, 1897, such appraisers visited the residence of said deceased at No. 1716 Calhoun street; that they "then and there requested Mrs. Magdalena Frey, known as the widow of Joseph Fabacher, deceased, to point out " the property and effects of the de-. ceased; that she then and there informed them "that the deceased was not the owner of the furniture, movables, or effects contained " therein; and "that the same were owned entirely and exclusively by Mr. Lawrence Fabacher;" that April 10, 1897, they proceeded to further take an inventory, to wit, "one marble tomb in lot situated in St. Joseph's Cemetery No. 2, bearing the inscription, 'Family of Joseph Fabacher,' also two galvanized iron sofas and five vases valued by said appraisers at the sum of $3,500, and, there being nothing further to be included in this inventory," they then closed the same; that April 22, 1897, such inventory was by such court duly "approved and homologated as prayed for and according to law;" that on the same day of such approval that court made an order reciting that due and public notice having been given of such application according to law, and no opposition having been filed thereto,

and the time for opposing the same having elapsed, the court "ordered that said *Antoinette Thormann*, wife of Charles W. Thormann, be appointed administratrix of this succession, and that letters, as such, issue to her on her complying with the requisites of the law. Judgment rendered and signed April 22, 1897. FRED D. KING, Judge. A true copy. F. E. Peterson, Dy. Clk.;" that thereupon, and on April 30, 1897, that same court appointed the contestant, "*Mrs. Antoinette Thormann* (born Fabacher)," as "administratrix of the said succession of Joseph Fabacher," and stated therein that she had fulfilled all the requisites of the law.

The courts of Wisconsin are, of course, bound to give full faith and credit to the public acts, records, and judicial proceedings in Louisiana, as well as every other state in the Union. Const. of U. S. art. IV, sec. 1. This court has gone so far as to sanction the disallowance of a claim against an estate by the probate court of another state on the ground that such claim had been barred by the statutes of limitation of such state. *Sanborn v. Perry*, 86 Wis. 361. To a similar effect: *Griggs v. Becker*, 87 Wis. 313; *Parker v. Stoughton M. Co.* 91 Wis. 174, 181. So it has gone so far as to hold that where a resident of Wisconsin, owning lands in other states, makes a will disposing of all his property, the validity of the will, so far as such lands were concerned, must be left to the courts of the states, respectively, where such lands were situated. *Ford v. Ford*, 70 Wis. 19; *S. C.* 72 Wis. 621. In that case it was held, as the settled doctrine, supported by numerous adjudications, that the validity of every disposition of real estate by will must be governed by the law of the place where the land is situated, and that the validity of every disposition of personal property by will must be governed by the law of the testator's domicile at the time of his death. 70 Wis. 44, 45. It was also held in that case that where such will directed the personal assets to be invested in lands in another state the validity of such

investments must be left to the courts of such other state. Such rules were followed in such other states. *Ford v. Ford*, 80 Mich. 42; *Robertson v. Pickrell*, 109 U. S. 608.

These cases are cited to show that it has been and is the settled purpose of this court to give full faith and credit to the public acts, records, and judicial proceedings of other states. But to entitle a judgment in a court of another state to such full faith and credit in an action or proceeding *in rem*, like the case at bar, it must appear from the record thereof that the court rendering the same had jurisdiction of the subject matter of the action or proceeding. *Rose v. Himely*, 4 Cranch, 241; *Christmas v. Russell*, 5 Wall. 290; *Galpin v. Page*, 18 Wall. 350; *Thompson v. Whitman*, 18 Wall. 459; *Hart v. Sansom*, 110 U. S. 151; *Guaranty T. & S. D. Co. v. G. C. S. & M. R. Co.* 139 U. S. 137. Thus it is held in one of the cases cited that: " Records and judicial proceedings of each state affecting property or estate within it have in every other state the force and effect which they possess in the state of their origin; but, as to similar property or estate situated in another state, they have no greater or other force than similar records or proceedings in the courts of that state." *Robertson v. Pickrell*, 109 U. S. 608.

The record of the Louisiana court, in evidence, merely shows that the contestant was, after appropriate proceedings, appointed administratrix of the succession of the deceased, and that the inventory of the estate there presented consisted of the tomb, etc. There was no attempt in that court to adjudicate as to property situated in Wisconsin, nor as to the domicile of the deceased. That court, it may be conceded, had jurisdiction as to any tangible property actually located in that state. In the *Duchess of Kingston's Case*, cited and relied upon by counsel for the contestant, it was, in effect, determined by the judges, unanimously, more than 120 years ago (1) that the judgment of a court of *concurrent* jurisdiction, directly upon the point involved, was

conclusive between the same parties upon the same matter
directly in question in another court; (2) that the judgment
of a court of *exclusive* jurisdiction directly upon the point
involved was, in like manner, conclusive upon the same mat-
ter between the same parties coming *incidentally* in question
in another court for a different purpose. *Rex v. Duchess of
Kingston*, 20 How. State Tr. 538. But even in that case the
judges were equally unanimous in stating, as exceptions to
those rules, that no judgment "is evidence of any matter
which came collaterally in question, though within their
jurisdiction; nor of any matter incidentally cognizable; nor
of any matter to be inferred by argument from the judg-
ment." These exceptions have frequently received the sanc-
tion of this and other courts. *Lewis's Appeal*, 67 Pa. St. 165;
*Bennett v. Holmes*, 1 Dev. & B. Law, 487; *Caujolle v. Ferrié*,
13 Wall. 469; *Brown v. Brown*, 37 N. H. 537; *Hunter v.
Davis*, 19 Ga. 413; *Church v. Chapin*, 35 Vt. 224; *Williams
v. Williams*, 63 Wis., 70, 71. In a recent English case it was
"held that the decree of the probate court was not conclu-
sive *in rem* as to the domicile, for that it did not appear that
the decree was necessarily based on the finding as to domi-
cile." *De Mora v. Concha*, 29 Ch. Div. 268. It was there
queried whether the findings on which a judgment *in rem*
is based are in all cases conclusive against the world. Cer-
tainly there was no adjudication in the Louisiana court
which precluded the county court of Waukesha county from
taking jurisdiction and admitting the will to probate and
administering so much of the estate as was actually located
in Wisconsin, and this includes the bonds, mortgages, and
evidences of debt deposited in the Waukesha bank, with the
president thereof, who is executor of the will.

3. Counsel for the contestant contends that it was error
for the court to hold that the eleven children of Joseph Fa-
bacher and Magdalena Frey, all born before their marriage
of September 30, 1895, were the legitimatized children of Jo-

seph Fabacher, deceased, under and by virtue of the laws of
Wisconsin.   As indicated, all those children were of age and
residents and citizens of Louisiana, except the two minor
children.   The question of legitimatizing the children who
were such citizens of Louisiana was not properly involved
in determining whether the will should or should not be ad-
mitted to probate.   True, the contestant presented that issue,
and so the trial court determined the same against the con-
testant.   But it was foreign to the probate of the will.
While the legislature of Wisconsin may properly regulate
the status of citizens of this state, we do not understand that
it has any power to prescribe the status of citizens of other
states.   *Cook v. Cook,* 56 Wis. 195, and cases there cited; *St.
Sure v. Lindsfelt,* 82 Wis. 351; *State v. Duket,* 90 Wis. 276.
The constitution of this state provides that " all lands within
the state are declared to be allodial, and feudal tenures are
prohibited."   Const. art. I, sec. 14.   Being a resident of this
state and domiciled therein, the testator had the legal right,
under the laws of Wisconsin, to dispose of his property, real
and personal, as he pleased, and to whom he pleased, so long
as he infringed no law of this state.   He had the legal right,
therefore, to devise and bequeath his property to his chil-
dren by name, as he did, whether they were legitimate or
illegitimate.   So far as the judgment in form attempted to
legitimatize the adult children who were residing in and
citizens of Louisiana, we must hold that it was extra-judicial
and inoperative.

4. The testator being a resident and domiciled in Wau-
kesha, as found and determined, we perceive no legal im-
pediment to the marriage of the testator and Magdalena
Frey on September 30, 1895.   It appears to be pretty firmly
established that a statute of a state, prohibiting a married
person who has committed adultery and been divorced
therefor from remarrying, has no extra-territorial force,
and hence cannot prevent such person from lawfully remar-

rying in some other state, although it may subject him to punishment in the former state. *Dickson v. Dickson's Heirs*, 1 Yerg. 110; *S. C.* 24 Am. Dec. 444, 447; *Phillips v. Madrid*, 83 Me. 205; *S. C.* 12 L. R. A. 862; *Fuller's Adm'r v. Fuller*, 40 Ala. 301; *Wilson v. Holt*, 83 Ala. 528. The courts of Louisiana have applied the same rule to such prohibitory statute of the state of New York. *Succession of Hernandez*, 46 La. Ann. 962; *S. C.* 24 L. R. A. 831. The incidental and collateral effect of such marriage on the two minor children, it is unnecessary to consider.

*By the Court.*— The judgment of the circuit court is affirmed.

BARDEEN, J., took no part.