HALL, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*March 16—April 4, 1917.*

*Marriage: Validity: Lex loci: Divorce: Evasion of statute and judgment prohibiting remarriage: Public policy: Status of persons, fixed by judgment: Recognition in other states: Workmen's compensation: Dependents: "Wife:" "Member of the family."*

1. The general rule that a marriage valid where solemnized is valid everywhere has its exceptions where unusual circumstances would render its application inequitable or contrary to a declared public policy or to good morals.

2. It is the public policy of this state, declared in sec. 2330*m*, Stats. 1915, that marriages contracted without the state by residents hereof not qualified to marry within the state, and marriages contracted within the state by nonresidents not qualified to marry in their own state, shall be null and void.

3. The law of Illinois forbidding divorced persons to marry again within one year being substantially the same as the law in this

state and having received the same construction—to the effect that marriages contracted without the state to evade the statute are void,—the courts of this state will take cognizance of an evasion and infraction of such Illinois law and apply the same rule thereto as would be applied to a violation of our own law on that subject.

4. Thus, where an Illinois court, upon granting a divorce, decreed that neither party marry again within the year limited by the statute, but the divorced wife, for the purpose of evading such disability, went to Indiana and married within the year, and thereafter removed to Wisconsin, such marriage will not be recognized in this state.

5. The status of the divorced wife, having been declared and fixed by a court of competent jurisdiction in accordance with a sound public policy, should be recognized and held to be the same in, at least, all states having the same or similar laws. *Frame v. Thormann*, 102 Wis. 653, distinguished.

6. A marriage illegal in its inception cannot become valid in this state except by the establishment, either directly or circumstantially, of an actual contract of marriage after the removal of the impediment which rendered it illegal in the first instance, —mere cohabitation as husband and wife not being sufficient.

7. It appearing that a claimant of compensation on account of the death of her alleged husband had married him in Indiana within one year after an Illinois judgment of divorce and in evasion and violation of that judgment and of an Illinois statute, and that she and the deceased had thereafter come to Wisconsin and had lived here as husband and wife until her death, but without any new contract of marriage, it is *held* that she was not the lawful wife, nor was she "a member of the family" of the deceased, within the meaning of the Workmen's Compensation Act (sub. 4, sec. 2394—10, Stats.).

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

October 27, 1911, the plaintiff, then *Mrs. Wardner,* obtained a decree of divorce from her husband in the superior court of Cook county, Illinois, of which county and state she was then a resident. The decree contained this provision: "but neither party shall marry again within the time forbidden by statute unless they remarry each other." The time forbidden by statute was one year from the granting of

the decree. Sec. 4216, Ill. Ann. Stats. (Jones & Adding-ton). That section further provided that "every person marrying contrary to the provisions of this section shall be punished by imprisonment in the penitentiary for not less than one year, nor more than three years, and said marriage shall be held absolutely void." July 23, 1912, the plaintiff and Philip Hall, both then residents of Chicago, Illinois, went to Crown Point, Indiana, where a marriage was solemnized between them pursuant to the laws of Indiana, which provide that "Marriage is declared to be a civil contract, into which males of the age of eighteen and females of the age of sixteen, not nearer of kin than second cousins, and not having a husband or a wife living, are capable of entering." Sec. 8357, Burns' Ann. Stats. 1914. No disability of either party existed on the ground of age or kinship. After the marriage ceremony was performed at Crown Point the parties left immediately for *Barron,* Wisconsin, where they remained for about two months. They then returned to Chicago and resided there till May 1, 1914, when they again went to *Barron,* where they continued to live as husband and wife till the death of Hall on November 2, 1914. Both parties treated the marriage at Crown Point as valid from the time it was entered into until Hall's death, and during all that time they lived together as husband and wife.

At the time of his death Hall was in the employ of the city of *Barron* and met his death while discharging the duties of such employment. The *Industrial Commission* refused compensation under the Workmen's Compensation Act on the grounds that plaintiff was (1) not the lawful wife of Hall and (2) she was not a member of his family. Upon an appeal to the circuit court for Dane county the court entered a judgment confirming the order of the *Industrial Commission,* and from such judgment the plaintiff appealed.

The cause was submitted for the appellant on the brief of *H. G. Ellsworth* of Barron, for the respondent *Industrial*

*Commission* on that of the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and for the respondent *City of Barron* on that of *C. C. and A. E. Coe* of Barron.

VINJE, J.  That the law favors marriage and that a marriage valid where solemnized is generally held to be valid everywhere have become settled principles in our jurisprudence.  Like all general principles, however, they have their exceptions where unusual circumstances would render their application inequitable or where they are contrary to a declared public policy or to good morals.  Had the plaintiff been divorced in this state and gone to Indiana and married, as she did within the year, her marriage would have been absolutely void under the rule announced in *Lanham v. Lanham,* 136 Wis. 360, 117 N. W. 787.  It was there held that sec. 2330, Stats. 1898, as amended by ch. 456, Laws 1905,—in substance the same as sub. 2 of sec. 2330, Stats. 1915, which provides, "It shall not be lawful for any person, who is a party to an action for divorce from the bonds of matrimony, in any court in this state, to marry again until one year after judgment of divorce is entered, and the marriage of any such person solemnized before the expiration of one year from the date of the entry of judgment of divorce shall be null and void,"—rendered the marriage of a divorced person within the year void though solemnized outside the state.  Since the decision of that case the legislature in the enactment of sec. 2330m in 1915 has not only specifically declared the rule there announced to be the public policy of the state, but has extended the rule to include marriages solemnized in this state by nonresidents not qualified to marry within their own state.  Such section reads:

"Sec. 2330m.  1. If any person residing and intending to continue to reside in this state who is disabled or prohibited from contracting marriage under the laws of this state shall go into another state or country and there contract a

marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state.

"2. No marriage shall be contracted in this state by a party residing and intending to continue to reside in another state or jurisdiction, if such marriage would be void if contracted in such other state or jurisdiction and every marriage celebrated in this state in violation of this provision shall be null and void."

These statutory provisions make explicit exceptions to the general rule that a marriage valid where solemnized will be held valid everywhere. Sec. 4216 of the statutes of Illinois is substantially the same as sub. 2 of sec. 2330 of our statutes and it has received the same construction by the supreme court of Illinois that our court in the *Lanham Case* gave to our statute. See *Wilson v. Cook,* 256 Ill. 460, 100 N. E. 222, 43 L. R. A. N. S. 365, where the *Lanham Case* is quoted with approval. We have therefore a situation where both states have substantially the same declared public policy with reference to prohibited extraterritorial marriages, and we have further the statutory mandate enacted in 1909 and 1911 providing that

"Full faith and credit shall be given in all the courts of this state to a decree of annulment of marriage or divorce by a court of competent jurisdiction in another state, territory or possession of the United States, when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections 2354 and 2355. Nothing herein contained shall be construed to limit the power of any court to give such effect to a decree of annulment or divorce, by a court of a foreign country as may be justified by the rules of international comity; provided, that if any inhabitant of this state shall go into another state, territory or country for the purpose of obtaining a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce

under the laws of this state, a decree so obtained shall be of no force or effect in this state." Sec. 2360r, Stats. 1915.

The statute of Illinois with its judicial construction must be deemed imported into plaintiff's divorce decree, and since such statute and construction are substantially the same as ours and since they declare a public policy similar to our own, no good reason is perceived why this court should not take cognizance of plaintiff's evasion of the laws of our sister state and apply the same rule to their infraction that we would apply to a violation of our own like laws. The *Industrial Commission* found that plaintiff went to Indiana to marry in order to evade the disability created by the Illinois decree, and such conclusion finds support in the stipulated facts. The Illinois court had jurisdiction of plaintiff's person and it was competent for it to fix and declare her status. Such status so declared being founded upon grounds of sound public policy should be respected by at least all sister states having the same or similar laws. Reasonable restrictions against speedy remarriage of divorced parties are becoming more common in the statutes of our states and their intentional violation should find no sanction in states having similar restrictions. Only by each state enforcing public policies common to it and other states can our divorce laws be freed from the odium of being wilfully violated with impunity. Our states do not stand in the same relation to each other that foreign countries do. They are members of the same family, and sec. 1, art. IV, of the constitution of the United States requires each state to give full faith and credit to the judicial proceedings of every other state. Comity between states is daily growing and should be encouraged. It should especially find full play, in so far as it is consistent with the laws of the forum, in matters relating to the status of persons, to the end that when such status is once declared by a court of competent jurisdiction it may be held to be the

same everywhere.    We realize that our decision goes a step further than that of any case called to our attention, but we believe it is a step in the right direction. We also realize there is a great diversity of opinion as to the validity of prohibited marriages solemnized extraterritorially by residents of the state at the time of such marriage and at the time their validity is called in question.    On this subject see the cases and valuable notes in 24 L. R. A. 831; 57 L. R. A. 169; 11 L. R. A. N. s. 1082; 17 L. R. A. N. s. 800; 43 L. R. A. N. s. 358 and 365; L. R. A. 1916C, 748; 5 Ruling Case Law, 1004 *et seq.,* and 9 Ruling Case Law, 502 *et seq.*    Cases arising before statutory prohibitions were in force are not so valuable in the solution of the question before us because there was in them generally no element of intentional evasion of a law, or, if a law was violated, it was generally a penal statute of one state perhaps not common to others.    The law here in question is one of public policy which may well find enforcement in extraterritorial jurisdictions having the same or similar laws.

The case is quite different from the class of cases of which *Frame v. Thormann,* 102 Wis. 653, 79 N. W. 39, forms an example, where it was sought to invoke the aid of an extraterritorial penal statute which we did not have in form or substance.    In such cases extraterritorial statutes will not be enforced in this state.    The difference is clearly pointed out in *Lanham v. Lanham,* 136 Wis. 360, 117 N. W. 787.

It is urged that the marriage of plaintiff would be held valid by the courts of Indiana.    This argument we are in no position to meet, nor is it necessary that we should.    The question is whether the courts of our state should recognize it.    Some doubt as to whether Indiana courts would hold as contended may be suggested by the fact that that state has a statutory provision to the effect that "A divorce decreed in any other state, by a court having jurisdiction thereof, shall have full effect in this state" (sec. 1090, Burns' Ann. Stats.

1914), and by the further provision contained in sec. 8367 to the effect that marriages solemnized outside the state in order to evade the provisions of the Indiana laws shall be void. It is evident that Indiana also has provided for exceptions to the rule, that a marriage valid where solemnized is valid everywhere.

Since the marriage in Indiana was invalid it could not ripen into a valid common-law marriage after the lapse of the year by mere cohabitation. It is now the settled doctrine of this state that a marriage illegal in its inception cannot become valid except by the establishment, either directly or circumstantially, of an actual contract of marriage after the removal of the impediment which rendered it illegal in the first instance—mere cohabitation as husband and wife is not enough. *Williams v. Williams,* 46 Wis. 464, 1 N. W. 98; *Spencer v. Pollock,* 83 Wis. 215, 53 N. W. 490; *Thompson v. Nims,* 83 Wis. 261, 53 N. W. 502; *Lanham v. Lanham,* 136 Wis. 360, 117 N. W. 787; *Severa v. Beranak,* 138 Wis. 144, 119 N. W. 814.

The claim that plaintiff was a member of the family of Hall and on that ground was entitled to compensation is negatived in *Armstrong v. Industrial Comm.* 161 Wis. 530, 154 N. W. 844.

*By the Court.*—Judgment affirmed.