STATE, Plaintiff, vs. GRENGS and another, Defendants.

*June 9—July 1, 1948.*

The cause was submitted for the plaintiff on the brief of the *Attorney General, William E. Torkelson,* assistant attorney general, and *Henry C. Oakey,* district attorney of Polk county, and for the defendants on the brief of *Nelton & McGinnis* of Balsam Lake.

FRITZ, J.  The facts essential in the consideration of the certified questions are as follows.  Prior to October, 1945,

the defendant Clara Stoltz was married to Paul Stoltz and lived with him in Polk county when the defendant, Gordon Grengs, in said month became and has since continued to be a resident of that county. On February 16, 1947, Clara Stoltz moved to St. Paul, Minnesota, and there obtained employment, where service of the summons and complaint was made upon her on March 7, 1947, in an action for divorce in which she was the defendant and her husband, Paul Stoltz, was plaintiff; and which he commenced in the county court of Polk county. Clara Stoltz did not contest the divorce action, and the matter was tried as a default on May 15, 1947, in her absence, and she did not hear the judge's statement relative to the effect of the divorce upon the status of the parties. However, the judgment of divorce, among other things, provided:

"That this judgment of divorce in so far as it affects the status of the parties shall not become effective until the expiration of one year from May 15, 1947, being the date of entry hereof."

And a copy of that judgment was mailed to and received by Clara Stoltz. Thereafter she consulted an attorney at law in Minneapolis, who told her that in a great many cases people had remarried under such circumstances, and he had never heard of anybody getting into trouble as a result thereof. On July 14, 1947, the defendants Clara Stoltz and Gordon Grengs were married in Worth county, Iowa, and shortly thereafter returned to Polk county, Wisconsin, where, except for a three weeks' absence in Minnesota by Clara Stoltz, they lived together as husband and wife in Polk county, Wisconsin, openly and with no pretense of concealment or evasion.

Defendants contend that the so-called marriage of the defendants in Worth county, Iowa, on July 14, 1947, was a valid marriage under the laws of Iowa; that in Iowa, the laws of sister states imposing impediments or prohibitions on marriage, have no extraterritorial effect; and that a marriage

valid in the state where made is valid everywhere, including Wisconsin, notwithstanding the provisions in sec. 245.03(2) and also sec. 245.04(1), Wis. Stats., and the above-quoted provisions in the Wisconsin judgment of divorce, granted on Paul Stoltz' complaint, in so far as that provision affects the marital status of the parties until the expiration of one year from the entry of the judgment on May 15, 1947. Defendants also contend that even if the so-called marriage on July 14, 1947, in Iowa was held invalid there, or held valid there but invalid in Wisconsin, nevertheless the Iowa marriage in form is a good defense to the charge of adultery because in order to sustain such conviction it must be established that one of the parties so convicted, at the time of the alleged cohabitation on August 5, 1947, had a legal spouse living; and that although defendants admit that Paul Stoltz was alive on that date, they do not admit that Clara Stoltz Grengs then had a living husband. In support of this contention defendants claim that although the Wisconsin judgment of divorce was duly entered on May 15, 1947, the parties to that divorce were no longer married and owed no duty or obligation one to the other; that although neither could enter into a valid marriage for a period of one year, no statute or decision of Wisconsin proclaims or holds that the act of cohabitation by either the divorced husband or wife during the prohibited year constitutes adultery. And finally defendants contend that in order to convict the defendant Clara Stoltz Grengs there must be established criminal intent on her part; and defendants claim the proof was insufficient to establish such intent because before entering into the Iowa marriage she sought legal counsel and made an effort to ascertain her marriageable status; and that although she had a copy of the judgment of divorce, if she incorrectly understood and construed the above-stated provision therein as to the continuance of the marital status continuing until the expiration of one year from May 15, 1947, she should not be found to have entertained a criminal intent.

None of those contentions and claims by defendants can be sustained. At the time of the purported marriage between Gordon Grengs and Clara Stoltz in Iowa on July 14, 1947, she was in contemplation of law still married to Paul Stoltz, because it was then still within a year of the time when the judgment of divorce was entered in county court of Polk county in the action between Clara Stoltz and Paul Stoltz on May 15, 1947. Under and by reason of the express provision therein,—

"That this judgment of divorce in so far as it affects the status of the parties shall not become effective until the expiration of one year from May 15, 1947, being the date of entry hereof,"

there was no absolute divorce when the judgment was entered on May 15, 1947. Moreover that provision in the judgment was clearly warranted by and there were applicable thereto the unambiguous and mandatory provisions in sec. 247.37(1), Stats.,—

"When a judgment or decree of divorce from the bonds of matrimony is granted so far as it affects the status of the parties it shall not be effective until the expiration of one year from the date of the granting of such judgment or decree; . . ."

And there were likewise applicable thereto the provisions in subs. (3) and (4) of sec. 247.37, Stats., that,—

"(3) It shall be the duty of every judge, who shall grant a judgment or decree of divorce, to inform the parties appearing in court that the judgment or decree, so far as it affects the status of the parties, will not become effective until one year from the date when such judgment or decree is granted.

"(4) Such judgment or decree, or any provision of the same, may be reviewed by an appeal taken within one year from the date when such judgment or decree was granted. At the expiration of such year, such judgment or decree shall become final and conclusive without further proceedings, unless an appeal be pending, or the court, for sufficient cause

shown, upon its own motion, or upon the application of a party to the action, shall otherwise order before the expiration of said period. If an appeal be pending at the expiration of said year, such judgment or decree shall not become final and conclusive until said appeal shall have been finally determined."

In view of those provisions in sec. 247.37, Stats., this court has consistently held that until the expiration of the year from the date of granting the judgment of divorce, there is no absolute severance of the marital relationship and that, in so far as material in the present case, the parties to the action were still considered as being married in legal contemplation. *Hiller v. Johnson,* 162 Wis. 19, 23, 24, 154 N. W. 845; *White v. White,* 167 Wis. 615, 168 N. W. 704; *Ex parte Soucek* (7th Cir.), 101 Fed. (2d) 405, 406. Hence there can be no escape from the conclusion that at the time the defendants herein attempted to go through the purported marriage ceremony in Iowa on July 14, 1947, Clara Stoltz was still married to Paul Stoltz. Consequently, the fact that Clara Stoltz was in legal contemplation still married to Paul Stoltz at the time she attempted to go through the marriage ceremony with Gordon Grengs in Iowa renders the marriage void everywhere, even in Iowa. The resulting legal situation which arises when one of the parties to a divorce judgment, which severs the marriage bond immediately upon entry of the judgment, goes into another state and there remarries contrary to the provisions of a statute of the state granting the divorce, which merely prohibits remarriage within a specified time, is materially different from the legal situation and consequences in such a case as is presently involved herein, which arises under such provisions in statutes and in judgments which we have in Wisconsin (as stated above), and under which the divorce judgment when entered does not then completely sever the marital relationship; but provides instead that the marriage status is not fully terminated until the ex-

piration of a specified time in the future. Under such provisions in sec. 247.37, subs. (1), (3), and (4), and the above-stated provision in the judgment in question entered on May 15, 1947, if an attempted remarriage takes place before the specified time has elapsed, neither of the parties to the action of divorce ceases to be married to the other until the elapse of that time. Until then neither of said parties can marry again and an attempted marriage prior thereto is invalid everywhere. As is stated in 35 Am. Jur., Marriage, pp. 297, 298, sec. 184,—

"If, however, the effect of the provision of the statute or the decree of divorce is to postpone the dissolution of the former marriage until the lapse of the prescribed period, it is clear that a remarriage within that period will not be recognized or given effect in the state where the decree was granted, or, for that matter, in any other state, since, *ex hypothesi,* one of the parties at the time of the remarriage had not the status of an unmarried person. A provision of the statute or decree, thus postponing the dissolution of the former marriage, is part of the decree and within the full-faith-and-credit provision of the federal constitution. The real question in this connection is whether the provision of the statute or decree in question does postpone the dissolution of the former marital relation. If it does so postpone the dissolution of the former marital relation, it generally binds both parties to the divorce in such respect, so that a marriage by either of them in another state within the prohibited period will not be recognized." To the same effect see *Hall v. Industrial Comm.* 165 Wis. 364, 367, 162 N. W. 312; *Lanham v. Lanham,* 136 Wis. 360, 117 N. W. 787; 17 L. R. A. (N. S.) 804; 128 Am. St. Rep. 1085; Restatement, Conflict of Laws, p. 194, sec. 130, comment *a* and illustration 2.

It follows that for the reasons stated above the marital status of Paul Stoltz and Clara Stoltz continued to be that of husband and wife until the expiration of one year from the entry of the judgment on May 15, 1947, and as Paul Stoltz was living on the date of the alleged adultery on August 5,

1947, Clara Stoltz was then, in legal contemplation still married to Paul Stoltz, who defendants concede was alive on August 5, 1947, when she committed adultery with Grengs, who then likewise in legal contemplation was an unmarried man and not her husband.

The fact that Clara Stoltz sought the advice of a Minneapolis attorney constitutes no excuse and affords no defense for her violating the law. There is authority that intent is an element of the crime of adultery (2 C. J. S., Adultery, p. 476, sec. 7; 1 Am. Jur., Adultery, p. 688, sec. 16). In this case the error of Clara Stoltz was solely one of law as to her status under the Wisconsin divorce judgment and the resulting effect upon her right to remarry within a year. Under the circumstances such as here, criminal intent will be conclusively presumed. As is stated, among other things, in 2 C. J. S., Adultery, p. 476, sec. 7,—

"Where one of the parties entering into a marriage has been previously married, they are bound to know or ascertain the law and the facts of the right to remarry for themselves at their peril, and a sufficient criminal intent to commit adultery is conclusively presumed against them, in their failure to do so."

In *State v. Goodenow,* 65 Me. 30, 32, 33, the court stated,—

"It is undoubtedly true, that the crime of adultery cannot be committed without a criminal intent. But the intent may be inferred from the criminality of the act itself. Lord Mansfield states that rule thus: 'Where an act, in itself indifferent, becomes criminal if done with a particular intent, there the intent must be proved and found; but where the act is in itself unlawful, the proof of justification or excuse lies on the defendant; and in failure thereof, the law implies a criminal intent.'

"Here the accused have intentionally committed an act which is in itself unlawful. In excuse for it, they plead their ignorance of the law. This cannot excuse them. Ignorance of the law excuses no one."

The principle of law that intent may be inferred from the criminality of the act itself has been recognized and followed in Wisconsin. *Lochner v. State,* 218 Wis. 472, 481, 482, 261 N. W. 227.

*By the Court.*—Each of the three questions reported is answered in the negative.

MARTIN, J., took no part.