DAVIDSON, by Special Administrator, Appellant,
v. DAVIDSON, Respondent.

*May 10—June 6, 1967.*

402

404

For the appellant there was a brief by *Lichtsinn, Dede, Anderson & Ryan* of Milwaukee, and oral argument by *Karl M. Anderson.*

For the respondent there was a brief by *Goldberg, Previant & Uelmen,* and oral argument by *Thomas N. Tylicki,* all of Milwaukee.

BEILFUSS, J.   The principal issue in this case is:

Where a plaintiff wife commenced an action for annulment of a marriage upon the ground that at the time of the marriage her husband was married to another woman, which fact was not discovered by the plaintiff until shortly before commencement of the suit, and where the wife alleged that a divorce from the prior marriage became final after the plaintiff's marriage, did the cause of action for annulment of the marriage with relief incidental thereto abate upon the plaintiff's death?

A resolution of this controversy requires a determination of whether the marriage was void or voidable. If the marriage was voidable it was valid and in effect at the time of Leona's death and the personal cause of action for annulment abated at the time of her death.[1] If the marriage was void during its entirety the cause of action survives in her estate and the court could retain jurisdiction to declare the marriage void and restore her property to the estate.

In *Lyannes v. Lyannes* (1920), 171 Wis. 381, 177 N. W. (2d) 683, the court stated at page 390:

"In the void marriage the relationship of the parties, so far as its being legal is concerned, is an absolute nullity from its very beginning and cannot be ratified."

And at page 391:

"The voidable marriage, on the other hand, may subsequently ripen into an absolute marriage, and is considered

---

[1] "A marriage which is merely voidable, however, is valid for all purposes until avoided or annulled in a proper proceeding during the lifetime of the parties. On the death of either spouse, the marriage cannot be impeached, and is made good ab initio." 35 Am. Jur., Marriage, p. 220, sec. 57.

valid and subsisting until annulled by judgment of a court of competent jurisdiction."

The terms "void" and "voidable" are distinguished in 35 Am. Jur., Marriage, p. 212, sec. 46, as follows:

"A definition of voidable and void marriage which will closely fit modern conditions is that a marriage may be considered voidable although prohibited by law when it is possible, under any circumstances, for the parties to contract the marriage, or subsequently to ratify it, while it should be considered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any conduct to ratify it, and if the statute expressly declares that the marriage is void."

The marriage entered into between Leona and Robert at its inception was at least voidable under sec. 245.03 (1), Stats., because Robert had a wife living at the time of the marriage; and it continued to be unlawful under sec. 245.03 (2) because the ceremony was performed within one year from the granting of the divorce to Mildred.

Sec. 245.21, Stats., provides, in part:

"All marriages hereafter contracted in violation of ss. 245.02, 245.03, 245.04 and 245.16 shall be void (except as provided in ss. 245.22 and 245.23)."

Sec. 245.002 (3), Stats., provides:
"In this title 'void' means null and void and not voidable."

If we considered no other statutes we would be led to conclude that the marriage between Leona and Robert was absolutely void.

However, sec. 245.24, Stats., provides for the removal of impediments and the validation of otherwise void marriages:

"**Removal of impediments to subsequent marriage.** If a person during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract in accordance with s. 245.16, and the

parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, or that the former marriage had been annulled, or dissolved by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to such former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents."

Leona's complaint in substance alleges she entered into the marriage under the belief that Robert's divorce was final and that he was a single man. This allegation is tantamount to an allegation that she entered into the marriage in good faith. She further alleges that until shortly before the commencement of the annulment action she was unaware that Robert was not divorced from Mildred at the time of this marriage. Mildred's divorce was granted June 11, 1956. The impediment to Robert's marriage to Leona was removed one year later on June 11, 1957. Leona by her own allegations continued to live with Robert in good faith after the removal of the impediment. Under the statute they are "held to have been legally married from and after the removal of such impediment."

*Hoffman v. Hoffman* (1943), 242 Wis. 83, 7 N. W. (2d) 428, is directly in point. Mrs. Hoffman was divorced from her former husband by the circuit court for Milwaukee county on May 21, 1925. Mr. and Mrs. Hoffman, both Wisconsin residents, were married in Waukegan, Illinois, on September 2, 1925, and lived together as husband and wife thereafter. The court found that Mr. Hoffman had entered into the marriage in good faith, believing that his wife had no impediment to the marriage with him. Mrs. Hoffman brought an action for divorce, and Mr. Hoffman brought a counterclaim for divorce and asserted an

alternative prayer for annulment. The court held that the marriage became valid one year after the judgment for Mrs. Hoffman's divorce from her prior husband. The court stated, at page 88:

"On the defendant's alternative prayer for an annulment of the Illinois marriage, the court held that said marriage was entered into by Mr. Hoffman in good faith and in full belief that the former marriage of the plaintiff had been dissolved by a divorce; and the impediment to the marriage of the parties having been thereafter removed by said divorce becoming absolute, and the parties having continued to live together as husband and wife in good faith on the part of Mr. Hoffman, the parties must be held to have been legally married from and after the removal of the impediment, under the provisions of sec. 245.35, Stats."

Sec. 245.35, Stats., referred to in *Hoffman* is almost word-for-word the present sec. 245.24. Moreover, the old section which forbade the Hoffman marriage used the words "null and void," while the present statute uses the word "void," which is elsewhere defined to mean "null and void." In effect, then, *Hoffman* was decided under substantially the same statutory language as now appears in sec. 245.24. Under *Hoffman* the marriage of Leona and Robert, although "void" when originally contracted, ripened into an absolute marriage when the impediment was removed. Thus under the *Lyannes* test, the marriage of Leona and Robert was not absolutely void *ab initio*.

The *Hoffman* holding of the validation of a marriage entered into in violation of the one-year waiting statute has recently been affirmed by this court in *Hutschenreuter v. Hutschenreuter* (1964), 23 Wis. (2d) 318, 127 N. W. (2d) 47, wherein the court said, at page 323:

"In any event, there being nothing in the record to indicate that either one of the parties entered into the marriage in other than good faith, the impediment, if any, existing at the time of the marriage was removed a few months later when the wife's prior divorce became final.

Sec. 245.24, Stats.; *Hoffman v. Hoffman* (1943), 242 Wis. 83, 87, 88, 7 N. W. (2d) 428."

We hold, therefore, that the marriage of Leona and Robert on March 12, 1956, was not absolutely void but voidable and that it became a valid marriage after the removal of the impediment on June 11, 1957. Therefore the action for annulment abated upon the death of the plaintiff.

The appellant, special administrator, also contends that the complaint states facts sufficient to constitute an alternative cause of action for rescission of the marriage contract based on fraud on the part of Robert at the inception. This argument rests upon a claimed general equitable power in the circuit court to set aside marriages beyond the court's statutory power. This contention cannot be sustained. In *Lyannes v. Lyannes, supra,* this court held, at page 392:

". . . we deem it proper to say that we can see no valid reason for holding otherwise than the jurisdiction and power to annul is exactly the same as to divorce and that both are exclusively of statutory creation and neither rest upon nor can be extended by resort to the general equitable powers inherent in the circuit court as a court of equity."

In 3 Nelson, Divorce and Annulment (2d ed.), p. 295, sec. 31.17, it is stated:

"Nor will a suit on this ground be dismissed under the doctrine of clean hands, since that doctrine may not be invoked in contravention of the public policy of the state as expressed in the statute."

The public policy of the state is set forth in sec. 245.001 (2), Stats., in part, as follows:

"INTENT. It is the intent of chs. 245 to 248 to promote the stability and best interests of marriage and the family. . . . The consequences of the marriage contract are more significant to society than those of other contracts,

and the public interest must be taken into account always. . . . The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned."

The appellant further contends that even if the marriage cannot be annulled that the complaint sets forth facts sufficient to constitute a separate cause of action for the recovery of real estate based upon fraud and that this cause of action survives under the survival statutes (secs. 269.13, 269.16, 269.19, 287.01 and 895.01).

In *South Bend Chilled Plow Co. v. George C. Cribb Co.* (1900), 105 Wis. 443, 446, 81 N. W. 675, this court held:

". . . the test of whether there is more than one cause of action stated in a complaint is not whether there are different kinds of relief prayed for or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication."

In this instance the allegation of fraud, if it be such, goes only to the invalidity of the marriage and not to Robert's acquisition of Leona's property. The action is for annulment and the claim for relief for restoration of property is incidental to and dependent upon the claim for annulment.

Sec. 247.34, Stats., provides that "[u]pon rendering a judgment of annulment" the court may restore property to the wife. Here the proceedings had not reached the judgment stage and the court cannot grant the incidental relief of restoring property. The annulment action brought by Leona abated at her death and the court has no jurisdiction to restore any property, real or personal, to her estate in this action.

*By the Court.*—Order affirmed.