SINAI SAMARITAN MEDICAL CENTER, INC., Plaintiff-
Respondent,

v.

Morgan McCABE, Defendant-Appellant.†

Court of Appeals

*No. 95–0012. Submitted on briefs September 6,
1995.—Decided October 17, 1995.*

(Also reported in 541 N.W.2d 190.)

†Petition to review denied.

■■■■■■■■

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Wayne W. Wilson* and *John A. Horn* of *Wyngaard & Wilson* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Robert Hornik* of *Rausch, Hamell, Ehrle & Sturm, S.C.*, of counsel, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

FINE, J.   Morgan McCabe appeals from a judgment against him awarding to Sinai Samaritan Medical Center, Inc., expenses incurred in the treatment of Jean McCabe. Sinai Samaritan's complaint alleged that McCabe was liable for the costs of treatment because he was Jean McCabe's husband. He raises two issues. First, he contends that the trial court erred in concluding on summary judgment that he and Jean McCabe were married at the time that she was treated by Sinai Samaritan. Second, he argues that he cannot be held responsible for the costs of Jean McCabe's treatment because Wisconsin's marital property law never applied to Jean McCabe and him. We affirm.

Jean McCabe died on January 11, 1994. She and Morgan McCabe were married in 1966. Although Jean McCabe had married Joseph Kaufman in 1949, they were divorced in Mexico in 1965. The crux of Morgan McCabe's defense to Sinai Samaritan's action was that the Mexican divorce was invalid and that, therefore, he was never legally married to Jean McCabe. The trial court rejected this defense, ruling on summary judgment that Morgan McCabe and Jean McCabe were

married during the time relevant to Sinai Samaritan's lawsuit.[1]

Summary judgment is used to determine whether there are any disputed issues for trial. *U.S. Oil Co., Inc. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Our review of a trial court's grant of summary judgment is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). First, we must determine whether the complaint states a claim for relief. *Ibid.* If the complaint states a claim and the answer joins issue, we must then determine whether the depositions, answers to interrogatories, admissions on file, and affidavits, if any, entitle a party to judgment as a matter of law. *See ibid.* Summary judgment must be entered if this evidentiary material demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RULE 802.08(2), STATS.

---

[1] The trial court denied Morgan McCabe's motion for summary judgment, ruling that "Morgan McCabe was the legal husband of Jean during the period relevant to this litigation." Although it professed inability to grant summary judgment to Sinai Samaritan on this issue because "no formal motion for summary judgment" was "proffered" by Sinai Samaritan, the effect of the trial court's ruling foreclosed inquiry into this issue at the trial. The trial court could have, of course, granted summary judgment on the issue of whether Morgan McCabe was the husband of Jean McCabe even though Sinai Samaritan did not formally so move. *See* RULE 802.08(6), STATS. ("If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor.").

■ The dispositive statute governing whether Morgan McCabe may dispute the validity of his marriage to Jean McCabe is § 767.03, STATS., which provides, as material here: "No marriage may be annulled after the death of either party to the marriage." One of the grounds for an annulment of a marriage is that "[t]he marriage is prohibited by the laws of this state." Section 767.03(4), STATS.[2] Marriage is prohibited if one of the parties seeking to marry "has a husband or wife living." Section 765.03(1), STATS. Although Morgan McCabe could have sought annulment of his marriage to Jean McCabe prior to her death on the ground that Jean McCabe's divorce from Joseph Kaufman was invalid, *see* § 767.03(4), § 767.03 closed that avenue when Jean McCabe died.[3] There was thus no genuine

---

[2] Section 767.03(4), STATS., provides:

A court may annul a marriage entered into under the following circumstances: . . . The marriage is prohibited by the laws of this state. Suit may be brought by either party within 10 years of the marriage, except that the 10-year limitation shall not apply where the marriage is prohibited because either party has another spouse living at the time of the marriage and the impediment has not been removed under s. 765.24.

[3] Morgan McCabe contends that the declaration in § 765.21, STATS., that marriages contracted in violation of, *inter alia*, § 765.03(1), STATS. (no person may marry if he or she has a living spouse), are "void" and, therefore, need not be annulled. We disagree. Although "void," such a "marriage" governs legal relations unless it is annulled pursuant to § 767.03(4). This may not be done after one of the parties to the marriage dies. Section 767.03, STATS. *Davidson v. Davidson*, 35 Wis. 2d 401, 410, 151 N.W.2d 53, 57 (1967), upon which Morgan McCabe relies and which predated § 767.03, is not to the contrary. *Davidson* held that an action brought by a wife to annul her marriage on the ground that her husband was still married to another woman at

issue of material fact that required a trial on whether Morgan McCabe and Jean McCabe were married during the time relevant to this lawsuit, and the trial court appropriately decided that issue on summary judgment.[4]

██

Section 765.001(2), STATS., declares that husbands and wives "owe to each other mutual responsibility and support," and that "[e]ach spouse has an equal obligation in accordance with his or her ability to contribute money or services or both which are necessary for the adequate support and maintenance of . . . the other spouse." "Providing for a spouse's necessary medical treatment according to one's ability is a duty of support owed under § 765.001(2), STATS." *St. Mary's Hosp. Medical Ctr. v. Brody*, 186 Wis. 2d 100, 109, 519 N.W.2d 706, 710 (Ct. App. 1994). Morgan McCabe contends, however, that the extent of his liability is governed by § 766.55(2), STATS., and that this latter provision does not apply to him because he was never domiciled in Wisconsin after the applicability of the Wisconsin marital property act.[5] He argues, therefore, that we should

the time of the marriage abated upon the death of the wife bringing the action even though the statutes declared such marriages to be "null and void and not voidable." *Id.*, 35 Wis. 2d at 407, 151 N.W.2d at 55. The provision "No marriage may be annulled after the death of either party to the marriage," which is now found in § 767.03, was first enacted by Laws of 1977, ch. 105, § 9.

[4] We do not, therefore, consider the alternate grounds advanced in support of the trial court's ruling. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

[5] With exceptions not relevant here, Chapter 766, STATS., "first applies to spouses upon their determination date." Section 766.03(1), STATS. " 'Determination date' means the last to occur

apply the "default" provision of common-law liability, which excuses a husband from having to provide for his wife's medical treatment when she is away from his home unreasonably. *See Luther Hosp. v. Garborg*, 71 Wis. 2d 460, 461–462, 238 N.W.2d 529, 530–531 (1976). We disagree.

Section 766.55(2)(a), STATS., provides that "[a]fter the determination date . . . [a] spouse's obligation to satisfy a duty of support owed to the other spouse . . . may be satisfied only from all marital property and all other property of the obligated spouse."[6] This provision, however, does not delimit the obligated spouse's liability. As noted by *St. Mary's Hospital Medical Center*, 186 Wis. 2d at 112–113, 519 N.W.2d at 711–712 (citation omitted):

> None of the paragraphs in § 766.55(2) create a direct cause of action against a spouse. Indeed, no part of § 766.55(2) creates any cause of action, direct or indirect. Rather, the paragraphs simply establish the categories "of obligations with which a couple may be involved, and . . . clarify what property is available to satisfy those different categories of obligations." Section 766.55(2)(a) imposes no obligation on a spouse to satisfy a duty of support to the other spouse or to a child of the marriage.

of the following: (a) Marriage. (b) 12:01 a.m. on the date that both spouses are domiciled in this state. (c) 12:01 a.m. on January 1, 1986." Section 766.01(5), STATS. (Paragraphing rearranged.)

[6] As noted, Morgan McCabe contends that he and Jean McCabe had no "determination date."

The obligation of support is imposed by § 765.001(2), STATS. Accordingly, a spouse is not relieved of this obligation simply because § 766.55(2)(a) may not apply.

*By the Court.*—Judgment affirmed.