IN THE MATTER OF the ESTATE OF Marjorie R. TOUTANT:

John ELLIS, Appellant,

v.

ESTATE OF Marjorie R. TOUTANT, Respondent.

Court of Appeals

*No. 00–2535. Submitted on briefs May 23, 2001.—Decided July 25, 2001.*

2001 WI App 181

(Also reported in 633 N.W.2d 692.)

On behalf of the appellant, the cause was submitted on the briefs of *John Barry Stutt* of *Stewart, Peyton, Crawford, Crawford & Stutt* of Racine.

On behalf of the respondent, the cause was submitted on the brief of *JoAnne M. Breese-Jaeck* of *Hostak, Henzl & Bichler, S.C.* of Racine.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. John Ellis appeals from a judgment of the trial court declaring the marriage of Ellis and the late Marjorie R. Toutant null and void. Ellis argues that the trial court did not have the authority to annul the marriage because a marriage cannot be annulled after death. In addition, Ellis argues that the marriage must be upheld because it was valid where it was celebrated and, at most, the marriage was only voidable under Wisconsin law. Ellis further argues that the full faith and credit clause of the United States Constitution prohibits Wisconsin from imposing its statutory requirements upon the marriage of a foreign national in Texas. The trial court's decision is consistent with Wisconsin law, and thus, we affirm the judgment of the trial court.

## FACTS

¶ 2. Toutant was a lifelong resident of Racine, Wisconsin, and was married to James Toutant for many years. James passed away on September 20, 1997.

¶ 3. Before James's death, Toutant came in contact with Ellis through one of her daughters. Toutant's daughter had placed an advertisement in a Scottish newspaper asking for some Scottish clothing that was to be a gift for her father. Ellis, then living in Scotland and married to Anne Marie Ellis, responded to the advertisement. Toutant sent Ellis a thank you note for his response to her daughter's request.

¶ 4. Following James's death in September 1997, Toutant became deeply depressed. At some point following James's death, Ellis and Toutant began corresponding on a regular basis.

¶ 5. In February 1998, Ellis came to Wisconsin to visit Toutant. This first visit lasted for approximately ninety days, the term of Ellis's visa. Ellis continued to frequently return to Racine for lengthy visits, residing with Toutant in her home in Racine, leaving only for renewal of his ninety-day visa. Between his first visit in February 1998 and September 1999, Ellis resided in Racine with Toutant for approximately 360 days.

¶ 6. Shortly before June 1999, Ellis gave the majority of his personal property to his then-wife Anne, and on August 12, 1999, Ellis was granted a divorce from Anne and he then returned to Racine. On September 6, 1999, Toutant was injured in a fall down some stairs, suffering a right shoulder separation and a fracture of her right foot. Despite this injury, Toutant and Ellis traveled to Texas in mid-September 1999, taking only enough luggage for a short trip. On Sep-

tember 13, 1999, Toutant and Ellis were married in Texas, thirty days after his Scottish divorce.

¶ 7. Following the wedding, Toutant and Ellis returned to Racine. Toutant died of a pulmonary embolism two weeks later on September 26, 1999. She and Ellis had remained in Racine from the date of their return from Texas until her death.

¶ 8. Toutant died testate on September 26, 1999, and in her will she named her son Kevin as her personal representative. Kevin filed Toutant's will and a petition for administration with the Racine county probate court on October 6, 1999. On October 7, 1999, Ellis filed a Surviving Spouse's Selection of Personal Property, selecting all of Toutant's clothing, jewelry, household furniture and appliances, and other personal property, including Toutant's car.

¶ 9. On December 1, 1999, the trial court filed an order of administration finding that Toutant's will dated February 26, 1997, was a valid uncontested document, and domiciliary letters were issued to Kevin. On January 21, 2000, Kevin filed a petition for declaratory judgment and supporting brief asking the court to adjudge the September 13, 1999 marriage of Toutant and Ellis null and void. Ellis challenged this petition, moving for its dismissal.

¶ 10. The trial court heard Ellis's motions to dismiss on February 18, 2000. The court took the motions under advisement and asked the parties to discuss the disputed facts of the case. A hearing was held on May 23, 2000, to discuss the status of the case, and a second status hearing was ordered for June 2, 2000. A trial was held on July 21, 2000, in Racine, Wisconsin, with Ellis appearing by telephone from England.

¶ 11. On July 25, 2000, the trial court ruled that the marriage between Ellis and Toutant was void because the marriage violated Wisconsin's six-month waiting period between a divorce and a subsequent marriage. The court signed an order for judgment on August 14, 2000, declaring the marriage null and void; judgment was entered that same day.

## DISCUSSION

¶ 12. Kevin, as personal representative of Toutant's estate, filed a petition for declaratory judgment, pursuant to WIS. STAT. § 806.04(1) and (4)(c) (1999–2000),[1] asking the court to declare the marriage between Ellis and Toutant null and void.

---

[1] WISCONSIN STAT. § 806.04 (1999–2000) is Wisconsin's Uniform Declaratory Judgments Act and states, in relevant part:

(1) SCOPE. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree, except that finality for purposes of filing an appeal as of right shall be determined in accordance with s. 808.03(1).

. . . .

(4) REPRESENTATIVES, ETC. Any person interested as or through a personal representative, executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, mental incompetent or insolvent, may have a declaration of rights or legal relations in respect thereto:

. . . .

(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

¶ 13. In a declaratory judgment action, the granting or denying of relief is a matter within the discretion of the trial court. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 635, 586 N.W.2d 863 (1998). A reviewing court will uphold a discretionary decision as long as the trial court's exercise of discretion was not erroneous. *Id.* at 635–36.

¶ 14. Using its declaratory judgment powers, the trial court declared the marriage of Ellis and Toutant null and void pursuant to Wis. Stat. §§ 765.03 and 765.04. Interpretation of a statute is subject to de novo review. *State v. Hughes*, 218 Wis. 2d 538, 543, 582 N.W.2d 49 (Ct. App. 1998). However, the trial court's findings of fact are reviewed under the clearly erroneous standard. *Flejter v. Estate of Flejter*, 2001 WI App 26, ¶ 34, 240 Wis. 2d 401, 623 N.W.2d 552 (Ct. App. 2000), *review denied*, 2001 WI 15, 241 Wis. 2d 210, 626 N.W.2d 808 (Wis. Feb. 7, 2001) (No. 99–2863).

¶ 15. Ellis argues that the trial court did not have the authority to annul the marriage because a marriage cannot be annulled after death. We wholeheartedly agree with this assertion. But as Ellis was informed by the trial court, the estate was "not asking [the marriage] to be annulled." The estate was asking that the marriage be declared null and void.

¶ 16. Wisconsin Stat. § 767.03 states, "No marriage may be annulled or held void except pursuant to judicial proceedings. No marriage may be annulled after the death of either party to the marriage." While

---

All statutory references are to the 1999–2000 version of the Wisconsin Statutes unless otherwise noted.

the first sentence expressly prohibits both the annulment or voiding of a marriage except pursuant to court proceedings, the second sentence pointedly prohibits only annulment after the death of either spouse. Thus, a marriage can be declared null and void after the death of a spouse. All arguments concerning annulment are therefore immaterial.

¶ 17. The trial court declared the marriage null and void pursuant to Wis. Stat. § 765.03. Section 765.03(2) states:

> It is unlawful for any person, who is or has been a party to an action for divorce in any court in this state, or elsewhere, to marry again until 6 months after judgment of divorce is granted, and the marriage of any such person solemnized before the expiration of 6 months from the date of the granting of judgment of divorce shall be void.

Under § 765.03(2), it is irrelevant that Ellis's divorce was granted in Scotland because it is unlawful for anyone who has ever been a party to a divorce in any court, within or without Wisconsin, to remarry within six months of the judgment of divorce.

¶ 18. Ellis argues that the marriage is valid because it was valid in Texas where it was celebrated. This assertion ignores the provisions of Wis. Stat. § 765.04. Section 765.04 expressly proscribes the celebration of marriage outside of Wisconsin to avoid the prohibition of § 765.03(2):

> (1) If any person residing and intending to continue to reside in this state who is disabled or prohibited from contracting marriage under the laws of this state goes into another state or country and there contracts a marriage prohibited or declared void under

the laws of this state, such marriage shall be void for all purposes in this state with the same effect as though it had been entered into in this state.

(2) Proof that a person contracting a marriage in another jurisdiction was (a) domiciled in this state within 12 months prior to the marriage, and resumed residence in this state within 18 months after the date of departure therefrom, or (b) at all times after departure from this state, and until returning maintained a place of residence within this state, shall be prima facie evidence that at the time such marriage was contracted the person resided and intended to continue to reside in this state.

Thus, if Ellis resided in Wisconsin within twelve months before the marriage and within eighteen months afterwards and he intended to continue to reside in this state, Wisconsin prohibited his remarriage within six months of his divorce, whether said remarriage occurred in Wisconsin or Texas.

¶ 19. Between February 1998 and Toutant's death in September 1999, Ellis spent 360 days in Racine, residing with Toutant in her residence continuously except for periods when he had to leave the country to renew his visa. In February 1999, Ellis and Toutant obtained a zoning variance to operate a business out of her Racine home. Ellis signed the application for the variance as Toutant's business partner. On the Texas marriage license, Ellis listed Toutant's Racine home as his residence. While Ellis testified that after the wedding he and Toutant intended to relocate to Texas, neither Ellis nor Toutant ever communicated that idea to anyone. No steps were taken to effectuate this move. No attempts were made to sell or rent Toutant's Racine residence, nor were any boxes packed to indicate an

impending move. Even after Toutant's death, Ellis took considerable steps to remain in Wisconsin, even traveling to Canada to renew his visa. The trial court found Ellis's testimony that he and Toutant had intended to move to Texas incredible, as do we. There is absolutely no evidence, other than Ellis's self-serving testimony, that the couple intended to live anywhere other than Wisconsin. A person's stated intent to establish residency is not conclusive but is merely evidence of attitude of mind. *Eastman v. City of Madison*, 117 Wis. 2d 106, 116 n.5, 342 N.W.2d 764 (Ct. App. 1983).

¶ 20. The term "reside" is not ambiguous. Resident does not necessarily mean citizen. BLACK'S LAW DICTIONARY 1311 (7th ed. 1999). A "residence" is defined as "[p]ersonal presence at some place of abode with no present intention of definite and early removal ... Residence implies something more than mere physical presence." *Eastman*, 117 Wis. 2d at 116 (citation omitted). With Ellis spending 360 days living in Toutant's home with the majority of his personal belongings from February 1998 through September 1999, it cannot be credibly argued that Ellis's residence was anything other than Toutant's Racine, Wisconsin home.

¶ 21. Whether the marriage would be valid under Texas law is irrelevant. The facts demonstrate that Toutant and Ellis were Wisconsin residents and intended to continue to be Wisconsin residents. Thus, under WIS. STAT. §§ 765.03 and 765.04, the marriage less than six months after Ellis's divorce is void.

¶ 22. The principal cases cited by Ellis, *Davidson v. Davidson*, 35 Wis. 2d 401, 151 N.W.2d 53 (1967), and *Sinai Samaritan Medical Center, Inc. v. McCabe*, 197 Wis. 2d 709, 541 N.W.2d 190 (Ct. App. 1995), are inapposite. *Sinai Samaritan* involved a creditor's action

against a surviving husband for medical bills incurred by his deceased spouse. *Sinai Samaritan*, 197 Wis. 2d at 711. *Sinai Samaritan* was a marital property case; we have before us an estate case involving a declaratory judgment as to how the assets of the estate should be distributed. The principles set forth in *Sinai Samaritan* are inapplicable.

¶ 23. *Davidson* was an annulment case brought by the wife on the grounds that her husband was still married to another woman at the time of the marriage. *Davidson*, 35 Wis. 2d at 403. However, the wife died while the annulment action was still pending. *Id.* at 404. The supreme court held that the action abated upon the death of the petitioner. *Id.* at 411. But again, this is not an annulment case. It is an estate action.

¶ 24. Ellis's argument that the marriage is valid here because it was valid where celebrated in Texas was specifically rejected by the Wisconsin Supreme Court in *State v. Grengs*, 253 Wis. 248, 33 N.W.2d 248 (1948). The *Grengs* defendants argued that their Iowa marriage was a valid marriage under Iowa laws, and that pursuant to the full faith and credit clause, a marriage valid in the state where made is valid everywhere, including Wisconsin, notwithstanding statutory provisions to the contrary. *Id.* at 250–51. The Wisconsin Supreme Court specifically rejected this argument, stating "[n]one of those contentions and claims by defendants can be sustained." *Id.* at 252.

¶ 25. Ellis argues that at most, the marriage was only voidable under Wisconsin law. Wisconsin has recognized a distinction between a void marriage and voidable marriage. *Lyannes v. Lyannes*, 171 Wis. 381, 391, 177 N.W. 683 (1920). In the void marriage, the relationship of the parties is an absolute nullity from the very beginning and cannot be ratified. *Id.* at 390.

The void marriage may be questioned at any time during the lifetime of either spouse and after the death of one or both. *Id.* Void marriages include

> those as between whom a judgment of divorce has already been entered, but by ... public policy ... are prohibited from another marriage within a statutory period after such judgment, and as to whom, in effect, the matrimonial knot is not yet completely severed by the sword of divorce.

*Id.* On the other hand, a voidable marriage

> may subsequently ripen into an absolute marriage, and is considered valid and subsisting until annulled by judgment of a court of competent jurisdiction.
>
> Between the absolutely void marriages and the voidable marriages, the distinction is often shadowy and the line hard to place.

*Id.* at 391. However, a discussion of void versus voidable marriages is unnecessary as Ellis's argument that the marriage is voidable ignores the plain language of the applicable statutes.

¶ 26. WISCONSIN STAT. § 765.03(2) specifically states that a "marriage ... solemnized before the expiration of 6 months from the date of the granting of judgment of divorce shall be *void*." (Emphasis added.) In addition, WIS. STAT. § 765.04(1) states that if anyone goes outside the state and contracts a marriage prohibited in Wisconsin, "such marriage shall be *void* for all purposes in this state with the same effect as though it had been entered into in this state." (Emphasis added.) WISCONSIN STAT. § 765.002(6) specifically states that "[i]n chs. 765 to 768 'void' means null and void and not voidable." Ellis's marriage to Toutant is not voidable, but null and void, an

absolute nullity from the very beginning which cannot be ratified. Wisconsin has repeatedly held that marriages out of state by Wisconsin residents to avoid the legal impediments in this state are void. *Ginkowski v. Ginkowski*, 28 Wis. 2d 530, 533, 137 N.W.2d 403 (1965).

¶ 27. Ellis further argues that the full faith and credit clause of the United States Constitution prohibits Wisconsin from imposing its statutory requirements upon the marriage of a foreign national in Texas. We disagree.

¶ 28. Article IV, section 1 of the United States Constitution requires each state to give full faith and credit to the judicial proceedings of every other state. Aside from the full faith and credit clause, no state is bound to enforce the laws of another. *Pac. Employers Ins. Co. v. Indus. Accident Comm'n of Cal.*, 306 U.S. 493, 500 (1939).

¶ 29. While the purpose of the full faith and credit clause is to preserve rights acquired in one state by requiring recognition of their validity in another,

> the very nature of the federal union of the states, to which are reserved some of the attributes of sovereignty, precludes resort to the full faith and credit clause as the means for compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate . . . "A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own."

*Id.* at 501 (citation omitted).

414

¶ 30. Without question, each state, including Wisconsin, has the power to declare what marriages between its own citizens shall not be recognized as valid in its courts; each state also has the power to declare that marriages between its own residents contrary to established public policy shall have no validity in its courts, "even though they be celebrated in other states under whose laws they would ordinarily be valid." *Lanham v. Lanham*, 136 Wis. 360, 365, 117 N.W. 787 (1908).

¶ 31. With respect to persons and events in our state, the full faith and credit clause does not require Wisconsin to substitute for its own statutes Texas's conflicting statute, even though the Texas statute would control the same persons and events in Texas. *Pac. Employers*, 306 U.S. at 502. To hold that the Wisconsin legislature intended the law prohibiting marriage within a certain time period to apply only while the parties are within the boundaries of the state "is to make the act essentially useless and impotent and ascribe practical imbecility to the lawmaking power." *Lanham*, 136 Wis. at 367. The language of the applicable statutes "seems unquestionably intended to control the conduct of the residents of the state whether they be within or outside of its boundaries." *Id.*

¶ 32. Ellis argues that his marriage to Toutant would be valid in Texas. "This argument we are in no position to meet, nor is it necessary that we should. The question is whether the courts of our state should recognize it." *Hall v. Indus. Comm'n of Wis.*, 165 Wis. 364, 370, 162 N.W. 312 (1917). We need not.

[W]hen persons domiciled in this state and who are subject to the provisions of the law leave the state for

415

the purpose of evading those provisions, and go through the ceremony of marriage in another state and return to their domicile, such pretended marriage is within the provisions of the law and will not be recognized by the courts of this state.

*Lanham,* 136 Wis. at 367–68.

## CONCLUSION

¶ 33. The trial court's decision is consistent with Wisconsin law. WISCONSIN STAT. § 765.03 prohibited Ellis and Toutant's marriage, and thus, the Texas marriage is null and void pursuant to WIS. STAT. § 765.04. We affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.