ANNETTE KINGSLAND ZIEGLER, J.
¶ 88. {dissenting). I write separately because I adopt neither the majority opinion nor Justice Gableman's dissenting opinion, and I urge the legislature to consider taking action. In Wisconsin, statutes not common law, govern marriage, divorce, and annulment. Because the issues raised in this case are not clearly addressed in the statutes, the legislature should consider the policy reasons that mili *220 tate in favor of and against the positions taken by the majority opinion and by Justice Gableman's dissent. In sum, I dissent because while case law may support a court's ability to void, as a matter of law, a marriage that is invalid ab initio, neither case law nor statutes support a court taking such action under the facts of this case.
¶ 89. The majority opinion concludes that the circuit court always has the ability to declare a marriage void after the death of one of the parties to the marriage. See majority op., ¶¶ 83-84. I part ways with the majority's sweeping opinion, under which any interested person may bring a declaratory action to void another person's marriage. The majority's policy reason is as follows: "We do not see how the 'best interests of marriage' are protected where legitimate questions about a spouse's capacity to contract marriage are precluded from consideration after the spouse dies." See majority op., ¶ 78 (quoting Wis. Stat. § 765.001(2)). The majority opinion however, is not cabined, as was previous case law, to an uncontroverted paper review of a marriage that was void ab initio. See infra, ¶ 93. The majority does not seem concerned with any limitations on such an action, nor does it lament that a decedent would never be able to defend his or her decision to marry. Notably, even an individual who has been declared legally incompetent and in need of a guardian may retain the capacity to marry. See Wis. Stat. §§ 54.25(2)(c)l.a., 51.59(1) (2009-10).[1] While the majority does opine that a marriage is presumed valid, it does not set forth the burden of proof that the challenger must meet, nor does it sufficiently address the practical evidentiary concerns raised by the circuit court. See majority op., ¶¶ 81-82; infra, ¶ 95.
*221 ¶ 90. On the other hand, I part ways with Justice Gableman's sweeping dissent, which concludes that a court can never void a marriage, even a marriage that is undisputedly void ab initio. See Gableman dissent, ¶ 98. Justice Gableman concludes that the legislature has made a public policy determination by not providing for a court to posthumously void a marriage. Id., ¶ 123. Under Justice Gableman's approach, I find it troubling that a court would be powerless to posthumously void an undisputedly invalid marriage and that those who are rightfully entitled to receive the decedent's estate would be left with no recourse, even if the marriage was undisputedly void ab initio.
¶ 91. Different, yet reasonable, considerations support the conclusions reached by either the majority opinion or Justice Gableman's dissent. As a matter of policy, the legislature could reasonably conclude that a court is endowed with the power to posthumously void a marriage always, sometimes, or never.
¶ 92. I dissent because no statute clearly provides a circuit court with the authority to posthumously void a marriage in a probate matter under the circumstances of this case. In Wisconsin, marriage, divorce, and annulment are governed by statute. See Wis. Stat. ch. 765; Watts v. Watts, 137 Wis. 2d 506, 519 n.11, 405 N.W.2d 303 (1987) (noting that there is no common law marriage in Wisconsin); see Gableman dissent, ¶ 110 (criticizing the majority opinion for relying on a common law action to void a marriage when marriage, divorce, and annulment are all governed by statute). No statute under Wis. Stat. chs. 765 (marriage), 767 (actions affecting the family), or 851-82 (probate), specifically provides the circuit court with the power to void a marriage posthumously. The statutes are clear, however, that a court may not annul a *222 marriage after the death of one of the parties to the marriage. Wis. Stat. § 767.313(2).
¶ 93. Case law may provide the court with the power to void a marriage after the death of one of the parties when the marriage is undisputedly void ab initio. The majority relies heavily on that case law and common law principles to conclude that the circuit court has the power to posthumously void a marriage.[2] However, as Justice Gableman's dissent discusses, subsequent legislative action arguably undermines the precedential value of those cases.[3] See Gableman dis *223 sent, ¶ 111. In addition, the facts of those cases are distinguishable from the facts of the case at issue. For example, in Toutant, the decedent Toutant had married Ellis within 30 days of Ellis's divorce from a prior spouse. Ellis v. Estate of Toutant, 2001 WI App 181, ¶ 6, 247 Wis. 2d 400, 633 N.W.2d 692. In Wisconsin, a person is prohibited from marrying again within six months of a divorce. Wis. Stat. § 765.03(2). Similarly, in Williams and Davidson, the marriages were challenged because, in both cases, one of the parties to the marriage was alleged to have been married at the time the challenged marriage took place. Williams v. Williams, 63 Wis. 58, 23 N.W. 110 (1885); Davidson v. Davidson, 35 Wis. 2d 401, 151 N.W.2d 53 (1967). The statutes clearly prohibit a person from being marriage to two people at the same time. See Wis. Stat. § 765.03; Davidson, 35 Wis. 2d at 407; majority op., ¶ 44. Similarly, in King v. Canon, 221 Wis. 322, 266 N.W. 918 (1936), the validity of a decedent's marriage was challenged because the decedent was an epileptic. However, at that time, a statute prohibited an epileptic from marrying. Id. at 325; majority op., ¶ 55. Thus, in these cases, a court could conclusively determine that the challenged marriage was void based upon the documentation alone.
*224 ¶ 94. Significantly, to the extent that these cases support the circuit court's ability to void a marriage after death, in each case, unlike the case at issue, the contested marriage was undisputedly void ab initio. Cf. State v. Hess, 2010 WI 82, ¶¶ 71-73, 327 Wis. 2d 524, 785 N.W.2d 568 (Ziegler, J., concurring) (discussing a warrant that was void ab initio, as the circuit court lacked the authority to issue the challenged warrant). In other words, as a matter of law, the contested marriage was undisputedly invalid from inception. See Lyannes v. Lyannes, 171 Wis. 381, 177 N.W. 683 (1920) (discussing void and voidable marriages); majority op., ¶¶ 52-53. In such actions, for example, the party challenging the marriage simply submitted documentary evidence to prove that the marriage was void, and the court could determine the validity of the challenged marriage from the documents alone. The evidentiary concerns raised by the circuit court in the case at issue, see infra, ¶ 95, are not of concern in such uncontroverted matters.
¶ 95. In this case, however, Patricia Mudlaff argued that her stepmother Nancy Laubenheimer's marriage to Joseph McLeod was invalid because Nancy lacked the mental capacity to enter into the marriage. To determine whether Nancy was competent to marry Joseph, the court would presumably need to hear evidence such as examinations and testimony from doctors on Nancy's mental state at the time she married Joseph. As the circuit court recognized, that is a difficult task given Nancy's death:
[I]f this Court is wrong in its determination that a court cannot invalidate [Nancy's] marriage, this Court will need great assistance from the reviewing court in determining what sort of evidence can be raised at this point in time to challenge [Nancy's] competency. Issues such as privilege, hearsay, the 'dead man's statute' and *225 other relevancy concerns all come in to question where the potential 'ward' is deceased. Additionally, great prejudice could result if a party seeking a determination [of] incompetency (and lack of right to consent to marriage) was able to have mom (or step-mom) examined by a doctor of [his or her] choosing prior to her death, whereas those opposed to the incompetency finding have not. The equities of that scenario are highly questionable.
I would affirm the circuit court's reasoning. Since the case law is questionable, and the relevant statutory-provisions do not clearly provide that a court has the power in a probate matter to void a marriage posthumously, legislative response to this situation is seemingly appropriate.
¶ 96. Strong policy concerns and equities militate both in favor of and against allowing a court to void a marriage after death. To the extent that the legislature deems it appropriate to endow courts with the authority to void marriage under certain circumstances, it should clarify the court's power to so act. Current statutes and case law do not clearly empower a court with the ability to void a marriage after the death of one of the parties to the marriage. As marriage, divorce, and annulment are all governed by statute, the legislature should likewise consider when, if ever, a marriage may be deemed void after the death of one of the parties to the marriage.
¶ 97. For the foregoing reasons, I respectfully dissent.

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 The circuit court distinguished this case from Davidson v. Davidson, 35 Wis. 2d 401, 151 N.W.2d 53 (1967), and Ellis v. Estate of Toutant, 2001 WI App 181, 247 Wis. 2d 400, 633 N.W.2d 692, based on the uncontested evidence that the marriages were void:
The arguments of those parties seeking to void the marriage in hoth Davidson and Toutant were based on uncontested factual realities. In Davidson, it was uncontested that Robert was still married to his first wife Mildred, at the time his marriage to Leona was solemnized on March 12,1956. In Toutant, it was uncontested that Marjorie and John were married only 30 days following his Scottish divorce. Those uncontested factual realities served as the basis of the argument that each of the respective marriages was contrary to Wisconsin law.... The proponents of invalidating [Nancy's] marriage need to prove that, in fact, the decedent was incompetent at the time of her marriage to Mr. McLeod. That is not a given. That is not undisputed.

 The precedential value of those cases is questionable because the legislature changed a key provision of Wis. Stat. § 767.313 since those cases were decided. See majority op., ¶¶ 70-73. At the time Toutant was decided, then-Wis. Stat. § 767.03 (1999-2000) read "No marriage may be annulled or held void except pursuant to judicial proceedings. No marriage may be annulled after the death of either party to the marriage." (Emphasis added.) In 2005, the legislature amended that language to remove the reference to a judicial proceeding to "void" a marriage. 2005 Wis. Act 443, § 145. A legislative note to that *223 Wisconsin Act states: "Reference to voiding a marriage is not included, in the restated language because [Wis. Stat.] Ch. 767 does not include actions to void a marriage." That note can be read in two ways. First, the note can be read to state that the legislature was responding to Toutant and removing the court's ability to "void" a marriage, leaving annulment and divorce as the only proceedings to terminate a marriage. Second, the legislature could have been removing the reference to voiding a marriage within Ch. 767 (actions affecting the family), because that action properly belongs in ch. 765 (marriage) or is a product of common law.